**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JANICE NADEAU, individually and on behalf of all others similarly situated, | Case No. 7:16-cv-7986-VB-LMS |
| Plaintiff, | ORAL ARGUMENT REQUESTED |
| v. | |
| EQUITY RESIDENTIAL PROPERTIES MANAGEMENT CORPORATION, | |
| Defendant. | |

**PLAINTIFF'S MEMORANDUM OF LAW**
**IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND .................................................................................................................... 2

DEFENDANT'S MOTION IS WITHOUT MERIT ...................................................................... 6

    I.    DEFENDANT IS ESTOPPED BY ITS BREACH
         OF THE ARBITRATION AGREEMENT IT SEEKS TO ENFORCE. ............................................. 7

    II.   DEFENDANT HAS WAIVED ITS RIGHT TO DEMAND ARBITRATION. .................................. 10

SUR-REPLY IS LIKELY WARRANTED .................................................................................. 13

CONCLUSION ...................................................................................................................... 14

i

# TABLE OF AUTHORITIES

**Cases**

*AIF X SPRL v. Axtel, S.A. de C.V.,*
  390 F.3d 194 (2d Cir. 2004) ............................................................................................8

*Brown v. Dillard's, Inc.,*
  430 F.3d 1004 (9th Cir. 2005) .................................................................................. Passim

*Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel,*
  346 F.3d 360 (2d Cir. 2003) ............................................................................................7

*Doctor's Assocs., Inc. v. Distajo,*
  66 F.3d 438 (2d Cir. 1995) ............................................................................................10

*Downing v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
  725 F.2d 192 (2d Cir. 1984) .........................................................................................1, 8

*Growtech Partners v. Accenture LLP,*
  118 F. Supp. 3d 920 (S.D. Tex. 2015).........................................................................11

*In Re Tyco Int'l Ltd. Sec. Litig.,*
  422 F.3d 41 (1st Cir. 2005)..................................................................................11, 12, 13

*Jacobs v. USA Track & Field,*
  374 F.3d 85 (2d Cir. 2004) ..............................................................................................8

*JLM Indus., Inc. v. Stolt-Nielsen SA,*
  387 F.3d 163 (2d Cir. 2004) ............................................................................................7

*Knipe v. Skinner,*
  999 F.2d 708 (2d Cir. 1993) .........................................................................................13

*Lane, Ltd. v. Larus & Brother Co.,*
  243 F.2d 364 (2d Cir. 1957) .........................................................................................11

*Menorah Ins. Co. v. INX Reins. Corp.,*
  72 F.3d 218 (1st Cir. 1995).........................................................................................12

*Nagy v. Arcas Brass & Iron Co.,*
  242 N.Y. 97 (1926)................................................................................................2, 10

*Noodles Dev., LP v. Latham Noodles, LLC,*
  2011 WL 204818 (D. Ariz. Jan. 20, 2011) ...............................................................12

*PB Americas Inc. v. Cont'l Cas. Co.,*
  690 F. Supp. 2d 242 (S.D.N.Y. 2010) ..........................................................................7

*Revise Clothing, Inc. v. Joe's Jeans Subsidiary, Inc.,*
  687 F. Supp. 2d 381 (S.D.N.Y. 2010) ........................................................................13

*Southland Corp. v. Keating,*
  465 U.S. 1 (1984) ..........................................................................................................7

*Transit Mix Concrete Corp. v. Local Union No. 282,*
  809 F.2d 963 (2d Cir. 1987) ..........................................................................................6

*Vaca v. Sipes,*
  386 U.S. 171 (1967) .......................................................................................................7

*Zhang v. Wang,*
  317 F. App'x 26 (2d Cir. 2008) ...............................................................................1, 10

**Statutes**

9 U.S.C. § 2.....................................................................................................................6

**PRELIMINARY STATEMENT**

Defendant Equity Residential Properties Management Corporation ("Defendant" or "Equity") refused to participate when Plaintiff Janice Nadeau properly initiated arbitration, thereby breaching the arbitration agreement it seeks to enforce and waiving its right to compel arbitration.  Accordingly, Defendant's Motion to Compel Arbitration (Dkt. Nos. 16-18 (the "Motion")) is without merit.

Briefly stated, Ms. Nadeau complained to her supervisor about Defendant's unlawful policy of forcing her and her colleagues to work off the clock.  Defendant responded by formally reprimanding her.  Ms. Nadeau then initiated arbitration with the American Arbitration Association ("AAA"), as required by Defendant's handbook.  However, Defendant refused to pay its required arbitration fees to the AAA or participate in any way in the arbitration. Defendant then fired Ms. Nadeau, in an apparent retaliation for her attempt to arbitrate regarding Defendant's unlawful wage policies.  After Defendant rejected multiple requests from the AAA and from Ms. Nadeau to pay its share of the filing fee and participate in arbitration, the AAA dismissed Ms. Nadeau's arbitration due to Defendant's refusal to arbitrate.  Only then did Ms. Nadeau bring this lawsuit.

Having refused to participate in a properly instituted arbitration of this matter, Defendant cannot now compel its arbitration.  A party that refuses to arbitrate, despite due initiation by the other party and demand for participation from the relevant arbitral authority, is in breach of its arbitration agreement.  *See Downing v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 725 F.2d 192, 195 (2d Cir. 1984).  And a party that is in breach of an agreement cannot seek to enforce a right to demand arbitration pursuant to that same agreement.  Moreover, "'[a] refusal by [a party] to arbitrate upon demand duly made by the other side constitutes . . . waiver'" by that party of its right to demand arbitration of those claims.  *Zhang v. Wang*, 317 F. App'x 26, 28 (2d Cir. 2008)

1

(quoting *Nagy v. Arcas Brass & Iron Co.*, 242 N.Y. 97, 98 (1926) (second alteration in original)).

Indeed, in a case that is on all fours, the Ninth Circuit unequivocally held that an employer who fails to participate in an employee-initiated arbitration cannot subsequently compel arbitration if the employee then files a lawsuit. *See Brown v. Dillard's, Inc.*, 430 F.3d 1004 (9th Cir. 2005) ("*Dillard's*") (holding that the employer was estopped by its breach of the arbitration agreement and also waived its right to arbitrate where the employer did not respond in arbitration and refused to pay the arbitral fee as required under its own dispute resolution policy, then argued the court should compel arbitration after the plaintiff filed a lawsuit). As the Ninth Circuit explained, "when an employer enters into an agreement requiring its employees to arbitrate, it must participate in the process or lose its right to arbitrate." *Id.* at 1013. Because Defendant failed to participate in a properly initiated arbitration, it cannot now compel arbitration.

## BACKGROUND

Plaintiff worked for Equity Residential as a Customer Support Assistant from approximately February 24, 2015, to June 10, 2016. (*See* Declaration of Janice Nadeau ("Nadeau Decl.") ¶ 4.) Plaintiff was employed as a full-time employee and typically paid as though she worked between 32 and 40 hours per week at an hourly rate between $17.00 and $17.21. (*Id.*)

On or about February 24, 2015, Ms. Nadeau executed an Arbitration Agreement and Acknowledgement that "would bind both [Ms. Nadeau] and Equity." (*See* Declaration of Mary Pawlisa ("Pawlisa Decl."), Ex. B, Dkt. No. 18-2, Arbitration Agreement at 1.) The Arbitration Agreement provided that any arbitration brought thereunder "be conducted in accordance with the terms set forth herein and the [AAA]'s National Rules for the Resolution of Employment

2

Disputes" and that "[f]iling and administrative fees of the arbitration will be paid by Equity."
(*Id.* at 2.)

Throughout the relevant period, Defendant regularly required employees, including

Plaintiff, to read and respond to text messages and phone calls before and after their scheduled

work hours.  (Nadeau Decl. ¶ 6.)

Throughout the relevant period, Defendant knowingly permitted, encouraged, and

required Plaintiff to work off-the-clock without properly tracking this work or paying her any

wages for it, including overtime wages.  (*Id.* ¶ 7.)

Plaintiff estimates that she worked, on average, at least two unpaid hours per week

responding to text messages and emails before and after her scheduled work shift.  (*Id.* ¶ 8.)

Defendant was able to avoid tracking this extra time by contacting Plaintiff and

employees outside of work hours with work related inquiries and tasks.  (*Id.* ¶ 9.)  Defendant

required Plaintiff and other employees to promptly respond to these off-the-clock texts and

emails before their next scheduled work shift.  (*Id.*)

Plaintiff and Defendant's other employees were not compensated for time spent reading

and responding to Defendant's off-the-clock correspondence.  (*Id.* ¶ 10.)

On or about May 3, 2016, after receiving text messages from her supervisor instructing

Plaintiff to attend a company event off-the-clock, Plaintiff responded with text messages

complaining of being forced to work off-the-clock and without compensation.  (*Id.* ¶ 11.)

On or about May 17, 2016, after Plaintiff complained of being forced to work off-the-

clock, Defendant issued an Employee Counseling Summary Report alleging that Plaintiff had

violated company policy by communicating with her supervisor by text message (despite the fact

that Plaintiff was responding to her supervisor's text messages and the fact that supervisors

routinely communicated by text message) and using inappropriate language.  (*Id.* at ¶ 12.)

Shortly thereafter, Plaintiff initiated arbitration with the AAA, as required by the

Arbitration Agreement.  (*Id.* ¶ 13.)  Pursuant to the applicable AAA rules, Defendant was

obliged to pay the entirety of its portion of the filing fee as soon as Ms. Nadeau met her filing

requirements.  (*Id.* ¶ 14 & Ex. 1, Employment Arbitration Rules and Mediation Procedures -

January 1 2016 ("AAA Rules"), at 15 (under "Costs of Arbitration (including AAA

Administrative Fees," stating that "[a] non-refundable fee in the amount of $1,500 is payable in

full by the employer, unless the plan provides that the employer pay more" and that "[t]he

employer's share is due as soon as the employee meets his or her filing requirements, even if the

matter settles").)[1]

Defendant, however, repeatedly refused to pay its filing fee to the AAA or participate in

the arbitration.  (*Id.* ¶ 15.)

On June 3, 2016, the AAA informed Ms. Nadeau that Defendant had not yet paid its

portion of the filing fees for the arbitration.  (*Id.* ¶ 16 & Ex. 2, June 3, 2016 Correspondence

between the AAA and Nadeau at 1 ("We are still waiting for [Defendant's] portion of the filing

fee.  We have asked they remit their portion by June 6, 2016.").)

On Friday, June 10, 2016, Defendant terminated Ms. Nadeau.  (*Id.* ¶ 17 & Ex. 3, June 10,

2016 Termination Letter from Equity to Nadeau.)  The reasons provided for the termination were

---

[1]  The "Employment Arbitration Rules and Mediation Procedures" apply even though the
Arbitration Agreement refers to the "National Rules for the Resolution of Employment
Disputes," an earlier title for the applicable rules.  (*See* AAA Rules at 17, Rule 1* ("The National
Rules for the Resolution of Employment Disputes have been re-named the Employment
Arbitration Rules and Mediation Procedures.  Any arbitration agreements providing for
arbitration under its National Rules for the Resolution of Employment Disputes shall be
administered pursuant to these Employment Arbitration Rules and Mediation Procedures.").)

pretextual, and Defendant fired Ms. Nadeau in retaliation for her complaining about Defendant's unlawful wage policies and for initiating arbitration before the AAA.  (*Id.* ¶ 17.)

On Monday, June 13, 2016, Ms. Lisa Leib, Defendant's Vice-President – Legal, and Ms. Nadeau conferred via phone regarding Ms. Nadeau's claim before the AAA.  (*Id.* ¶ 18.)  On June 20, 2016, the following Monday, Defendant reached out to Ms. Nadeau regarding the claim.  (*Id.* ¶ 19 & Ex. 4, June 20-23, 2016 Email Correspondence Between Defendant and Nadeau, at 3.)

On June 22, 2016, Ms. Nadeau reminded Defendant that the AAA was in contact with Defendant directly and that the AAA "[was] awaiting payment to start the process."  (*Id.* ¶ 20 & Ex. 5 at 3)  In response, Defendant admitted that it had yet to pay the AAA filing fee (believed by Defendant to be $1700 plus taxes) and offered instead to pay the applicable fee to Ms. Nadeau in full settlement of her claims.  (*Id.* ¶ 20 & Ex. 4 at 2-3.)

On June 23, 2016, Ms. Nadeau declined Defendant's settlement offer and again asked Defendant via email to "please pay [the] AAA" so that arbitration could commence.  (*Id.* ¶ 21 & Ex. 4 at 2.)  Despite Ms. Nadeau's clearly stated desire to proceed with arbitration, Defendant persisted in its efforts to avoid participation in arbitration, forcing Ms. Nadeau to tell Defendant that "at this point[,] I prefer to have everything documented and addressed through [the] AAA." (*Id.*)

On July 18, 2016, owing to Defendant's refusal to pay its portion of the AAA filing fee, the AAA dismissed Plaintiff's arbitration.  (*Id.* ¶ 22 & Ex. 5, July 18 2016 Correspondence from the AAA to Parties ("The employer has failed to submit payment as requested in accordance with our Employment Arbitration Rules . . . ; accordingly, we have administratively closed our file on this matter. . . . Because the employer has failed to comply with the Employment

Arbitration Rules and the Employment Due Process Protocol, we will decline to administer any future employment matter involving [Defendant].").)

Ms. Nadeau then retained counsel (*id.* ¶ 23) and, on October 12, 2016, filed a Complaint against Defendant alleging violations of the Fair Labor Standards Act (Counts I & V) and the New York Labor Law (Counts II, III, IV & VI) (*see* Dkt. No. 1).  Ms. Nadeau's Complaint made clear that Ms. Nadeau asserts that Defendant had waived its right to compel arbitration.  (*Id.* ¶¶ 20-25.)  Ms. Nadeau's counsel, on her behalf, paid a filing fee and paid to serve the Complaint on Defendant.  (*See* Declaration of Jeremiah Frei-Pearson ("Frei-Pearson Decl.") ¶ 6.)

On November 16, 2016, Plaintiff's counsel informed Defendant's counsel during a call that, because of Defendant's refusal to participate in arbitration, it had lost the right to demand arbitration of Plaintiff's claims and that Plaintiff would oppose any motion by Defendant seeking to compel arbitration. (*Id.* ¶ 7.)

## DEFENDANT'S MOTION IS WITHOUT MERIT

The Federal Arbitration Act ("FAA") permits a court to decline enforcement of an arbitration clause on legal and equitable grounds that would also permit avoidance of any contract.  *See* 9 U.S.C. § 2.[2]  Indeed, "arbitration is a matter of contract," *Transit Mix Concrete Corp. v. Local Union No. 282*, 809 F.2d 963 (2d Cir. 1987) (internal citation and quotation marks omitted), and thus, "a matter of consent, not coercion," *Stolt-Nielsen S.A. v. AnimalFeeds International Corp.*, 559 U.S.681 (2010) (internal citation and quotation marks omitted).  "While the FAA expresses a strong federal policy in favor of arbitration, the purpose of Congress in

---

[2] 9 U.S.C. § 2 provides that "[a] written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, *save upon such grounds as exist at law or in equity for the revocation of any contract*" (emphasis added).

enacting the FAA 'was to make arbitration agreements as enforceable as other contracts, *but not more so*.'"  *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 171 (2d Cir. 2004) (quoting *Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel*, 346 F.3d 360, 364 (2d Cir. 2003)) (emphasis in original).  Accordingly, "a party may assert general contract defenses . . . to avoid enforcement of an arbitration agreement."  *Southland Corp. v. Keating*, 465 U.S. 1, 16 n.11 (1984).

Here, Equity willfully defaulted in the performance of its own arbitration clause when it refused to participate in arbitration, thereby forcing Plaintiff to bring the action pending before this Court.  Equity cannot now compel Ms. Nadeau to honor an arbitration agreement that Equity itself materially breached.  In addition, Equity waived its right to arbitrate these claims through its refusal to participate in arbitration.  Having refused to arbitrate, Defendant must now face the consequences of its actions before this Court.

## I.   Defendant Is Estopped By Its Breach Of The Arbitration Agreement It Seeks To Enforce.

Defendant's willful default of its obligations under its arbitration agreement with Ms. Nadeau relieved Ms. Nadeau of her obligation to prosecute her claims exclusively in an arbitral forum.  *Cf. Vaca v. Sipes*, 386 U.S. 171, 185 (1967) (noting that individual employees may sue their employer directly for breach of a bargaining agreement if the employer has effectively repudiated the grievance and arbitration process) ("An obvious situation in which the employee should not be limited to the exclusive remedial procedures established by the contract occurs when the conduct of the employer amounts to a repudiation of those contractual procedures.  In such a situation (and there may of course be others), the employer is estopped by his own conduct to rely on the unexhausted grievance and arbitration procedures as a defense to the employee's cause of action." (internal citations omitted)); *PB Americas Inc. v. Cont'l Cas. Co.*, 690 F. Supp. 2d 242, 249 (S.D.N.Y. 2010) (noting that a fundamental principle of contract law is

that, if a party to a contract fails to perform a condition precedent, thereby breaching the contract, its counterparty is relieved of its obligation to perform under the contract).

Defendant refused to arbitrate a properly initiated proceeding, thereby defaulting under its obligations.  A party has refused to arbitrate if it "is ordered to arbitrate th[e] dispute [by the relevant arbitral authority] and fails to do so." *AIF X SPRL v. Axtel, S.A. de C.V.*, 390 F.3d 194, 198 (2d Cir. 2004) (quoting *Jacobs v. USA Track & Field*, 374 F.3d 85, 89 (2d Cir. 2004) (alterations in original)).  Here, Ms. Nadeau timely filed a demand (*see* Nadeau Decl. ¶ 13); the AAA, the relevant arbitral authority, instructed Defendant to pay the arbitration fees required by the agreement (*id.* ¶¶ 14-16 & Exs. 2 & 5); and Defendant knowingly refused to make such payment to the AAA, thereby causing the AAA to close the arbitration proceeding and state that it would "decline to administer any future employment matter involving [Defendant]" (*id.*, Ex. 5).  Such a refusal to arbitrate constitutes a default of the arbitration agreement.  *See Downing v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 725 F.2d 192, 195 (2d Cir. 1984) (noting that failure to arbitrate a dispute, despite being ordered to do so by the relevant arbitral authority, constitutes default of an arbitration agreement).

Accordingly, Defendant cannot now seek to enforce provisions in the contract, the conditions precedent to which were frustrated by Defendant's own actions.  In a case that is on all fours, the Ninth Circuit, in *Brown v. Dillard's, Inc.* ("*Dillard's*"), 430 F.3d 1004 (9th Cir. 2005), held that an employer who refused to participate in an employee-initiated arbitration cannot move to compel arbitration when the employee then brings an action in court, stating that "we hold that when an employer enters into an arbitration agreement with its employees, it must itself participate in properly initiated arbitration proceedings or forego its right to compel arbitration." 430 F.3d at 1006.

The facts in *Dillard's* are directly on point.  The plaintiff employee, after being

terminated for reasons she thought pretextual, had initiated a wrongful termination claim with the

AAA pursuant to her arbitration agreement with the employer.  *Id.* at 1008.  Her employer then

refused to pay its portion of the fees for the arbitration, and the employee was forced to file an

action in state court.  *Id.* at 1008-1009.  The employer removed the action to federal court and

moved to compel arbitration.  *Id.* at 1009.  The district court denied the motion, holding that the

arbitration agreement was unconscionable and thus unenforceable under California law.  *Id.*

On appeal, the Ninth Circuit affirmed the denial of the motion on other grounds, holding

that the employer could not enforce an agreement of which it was in material breach.  *Id.* at 1010

("Dillard's breached its agreement with Brown by refusing to participate in the arbitration

proceeding Brown initiated.  Having breached the agreement, Dillard's cannot now enforce it.").

The Ninth Circuit noted that to hold otherwise would "would set up a perverse incentive

scheme."  *Id.* at 1012.

> Employers [] would have an incentive to refuse to arbitrate claims brought by
> employees in the hope that the frustrated employees would simply abandon them.
> This tactic would be costless to employers if they were allowed to compel
> arbitration whenever a frustrated but persistent employee eventually initiated
> litigation.

*Id.*  As the Ninth Circuit recognized, allowing such tactics runs contrary to the national policy

favoring arbitration as it would only "encourage companies to refuse to participate" in

arbitration.  *Id.*

> [T]his case displays a dark side of our nation's policy in favor of arbitration.
> When a defendant in a judicial forum refuses to respond to a complaint that is
> properly filed and served, the court has the power to enter and enforce a default
> judgment.  Arbitration works differently.  The American Arbitration Association
> could not compel [the employer] to pay its share of the filing fee, and in the
> absence of the fee it could not proceed.  [The employee] had no choice but to
> come to court.  Many people in [the employee's] position would simply have
> given up.  Because she did not, we have the occasion to make clear that when an

9

employer enters into an agreement requiring its employees to arbitrate, it must participate in the process or lose its right to arbitrate.

*Id.* at 1013.

Here, as in *Dillard's*, Defendant's motion to compel arbitration must be denied.

## II.    Defendant Has Waived Its Right To Demand Arbitration.

"Like contract rights generally, a right to arbitration may be modified, waived or abandoned.  A refusal by a party to arbitrate upon demand duly made by the other side constitutes such a waiver." *Zhang v. Wang*, 317 F. App'x 26, 28 (2d Cir. 2008) (internal citations, quotation marks, and alterations omitted); *see also Nagy v. Arcas Brass & Iron Co.*, 242 N.Y. 97, 98 (1926) (per curiam) (affirming denial of a motion by defendant to direct arbitration of certain controversies pursuant to an arbitration agreement because the trial could have found "that the defendant had refused to arbitrate before the action was begun or else that because of the great delay on its part it intended to waive what would otherwise have been its right").  Indeed, the FAA requires a court to determine whether an arbitration agreement has been waived and is thereby unenforceable. *See Doctor's Assocs., Inc. v. Distajo*, 66 F.3d 438, 456 (2d Cir. 1995) (describing the waiver defense as a "statutorily mandated inquiry in [9 U.S.C.] § 3 cases").  "[C]rucial to the establishment of waiver in the arbitration context is the presence of conduct by the party seeking to compel arbitration which reflects a positive and unequivocal election to ignore his or her arbitration rights.'" *Zhang*, 317 F. App'x at 28 (internal citation and quotation marks omitted).

Here, Defendant's refusal to arbitrate reflects a positive and unequivocal election to ignore its arbitration rights.  As outlined above, despite being fully aware that Ms. Nadeau had initiated an arbitration proceeding against it and that it had the right (and obligation) to arbitrate those claims, Defendant refused to pay the fees required by the AAA or participate in the

10

arbitration proceedings in any way.  (*See* Nadeau Decl. ¶¶ 14-22.)  Indeed, Defendant acted so inconsistently with its right to arbitrate that the AAA stated that it would "decline to administer any future employment matter involving [Defendant]."  (*Id.*, Ex. 5.)

Courts routinely hold that such refusal to participate in arbitration constitutes waiver of the right to demand arbitration.  *See*, *e.g.*, *Lane, Ltd. v. Larus & Brother Co.*, 243 F.2d 364, 367 (2d Cir. 1957) (holding that the defendant's unjustified refusal to arbitrate liability and damages was sufficient to constitute such a repudiation of the obligation to arbitrate as to amount to a waiver of the correlative right to arbitrate) ("[B]y refusing to arbitrate the precise questions involved in this suit, [the defendant] had forfeited its own right to arbitrate.  A party cannot raise unjustifiable objections to a valid demand for arbitration, all the while protesting its willingness in principle to arbitrate and then, when the other side has been forced to abandon its demand, seek to defeat a judicial determination by asking for arbitration after suit has been commenced."); *In Re Tyco Int'l Ltd. Sec. Litig.*, 422 F.3d 41 (1st Cir. 2005) (affirming denial of motion to compel based on finding that former CEO unequivocally waived his right to arbitrate dispute with former employer given that CEO (i) sent letter to employer indicating that he did not consent to the AAA administration of the matter or agree to participate in the arbitration filed with the AAA and failing to propose an arbitrator who might meet his approval and (ii) failed to take further action until the AAA dismissed the employer's demand for arbitration, more than six months after the filing); *Dillard's*, 430 F.3d at 1012-1013 (9th Cir. 2005) (affirming denial of motion to compel based on finding that employer's refusal to pay fees demanded by arbitral authority or participate in arbitration duly-initiated by employee "easily satisf[ied]" any obligation by the employee to demonstrate that the defendant employer was aware of its right to arbitrate and had acted inconsistently with that right); *Growtech Partners v. Accenture LLP*, 118

11

F. Supp. 3d 920, 946 (S.D. Tex. 2015) (finding defendant waived its right to demand arbitration because a party cannot refuse to participate in arbitration and then move to compel arbitration when the other party files suit); *Noodles Dev., LP v. Latham Noodles, LLC*, No. 09-01094, 2011 WL 204818, at *2 (D. Ariz. Jan. 20, 2011) (same).

Moreover, Equity's refusal to arbitrate resulted in (i) delays, (ii) additional costs and attorneys' fees (*see*, *e.g.*, Frei-Pearson Decl. ¶ 6), and (iii) the loss of potential evidence and witnesses due to the passage of time, thereby prejudicing Ms. Nadeau.  *See Dillard's*, 430 F.3d at 1012-1013 (finding prejudice to plaintiff employee as a result of defendant employer's refusal to participate in arbitration) ("[Employee] did not choose to litigate.  She chose to arbitrate, and when she was rebuffed by [her employer], she sued as a last resort.  In this circumstance, we have no trouble concluding that the delay and costs incurred by [the employee] are prejudicial for the purpose of waiver analysis.").

Indeed, in *In Re Tyco Int'l Ltd. Sec. Litig.*, 422 F.3d 41 (1st Cir. 2005), a similar case involving a party's refusal to arbitrate, the First Circuit noted that "[e]ven as justice delayed may amount to justice denied, so it is with arbitration," and that "[i]n these circumstances [where a party's actions strongly suggest a deliberate strategy unilaterally designed to delay the arbitration proceedings], we require simply that [the other party] demonstrate a modicum of prejudice."  422 F.3d at 46 (finding that the expenses of submitting the AAA demand for arbitration, filing the district court complaint, and defending against motions for compelled arbitration constitute prejudice to the non-demanding party sufficient to support a finding that a right to demand arbitration was waived); *see also Menorah Ins. Co. v. INX Reins. Corp.*, 72 F.3d 218, 222-23 (1st Cir. 1995) (noting that the proximate relationship between the moving party's intentionally

12

dilatory tactics and the opposing party's litigation expenses constitutes sufficient "prejudice" to enforce waiver).

Having previously refused to participate in the arbitration that Ms. Nadeau properly initiated, Equity has waived its right to now demand arbitration of Ms. Nadeau's claims.  *See Tyco*, 422 F.3d at 46 ("[A party] should not be allowed to reject [another party's] demand for arbitration, stand idle, then submit a motion to compel arbitration after [the other party] has been required to commence a court proceeding . . . .").  Accordingly, Plaintiff respectfully submits that the Court should deny Defendant's motion to compel arbitration of this matter.  *Id.* at 46-47 ("Judicial condonation of such deliberate gamesmanship directly conflicts with the oft-cited principle that arbitration is not meant to be another weapon in the arsenal for imposing delay and costs in the dispute resolution process." (citations omitted)).

## SUR-REPLY IS LIKELY WARRANTED

Even though Plaintiff's Complaint makes plain that Defendant waived its right to compel arbitration (*see* Dkt. No. 1 ¶¶ 20-25) and Plaintiff's counsel informed Defendant's counsel of the waiver during a call prior to the Motion (*see* Frei-Pearson Decl. ¶ 7), Defendant's Motion does not substantively address the issue (*see* Memorandum of Law in Support of Defendant's Motion to Compel Arbitration, Dkt. No. 17, at 5).  Instead, Defendant simply states that if Plaintiff "assert[s] in response to Defendant's motion that the agreement to arbitrate is not enforceable due to waiver," that "Defendant will address those arguments and establish that they are baseless."  (*Id.*)

"Arguments may not be made for the first time in a reply brief."  *Knipe v. Skinner*, 999 F.2d 708, 711 (2d Cir. 1993).  Moreover, "[i]t is plainly improper to submit on reply evidentiary information that was available to the moving party at the time that it filed its motion and that is necessary in order for that party to meet its burden."  *See Revise Clothing, Inc. v. Joe's Jeans*

*Subsidiary, Inc.*, 687 F. Supp. 2d 381, 387 (S.D.N.Y. 2010) (granting application to consider sur-reply where movant provided new evidence on reply); *accord U.S. Bank, N.A. v. Squadron VCD, LLC*, No. 10-cv-5484-VB, Dkt. No. 44 (S.D.N.Y. Jun. 6, 2011) (Briccetti, J.) (granting request for leave to file sur-reply where reply papers provided previously undisclosed information) (copy attached as Ex. 1 to the Frei-Pearson Decl.).  Accordingly, if Defendant substantively addresses its own waiver and breach for the first time on reply, Plaintiff will likely respectfully request leave to file a sur-reply.

## CONCLUSION

Simply put, Defendant may not compel arbitration after having previously refused to participate in a properly initiated arbitration.  Accordingly, Defendant's Motion has little merit, and Plaintiff respectfully requests that the Court deny it.

Dated:  December 21, 2016
      White Plains, New York

                    Respectfully submitted,

                    **FINKELSTEIN, BLANKINSHIP,**
                    **FREI-PEARSON & GARBER, LLP**

                    *By:      /s/ Jeremiah Frei-Pearson*
                    Jeremiah Frei-Pearson
                    D. Greg Blankinship
                    John D. Sardesai-Grant
                    Difie M. Osborne
                    455 Hamilton Avenue, Suite 605
                    White Plains, New York 10601
                    Tel: (914) 298-3281
                    Fax: (914) 824-1561
                    jfrei-pearson@fbfglaw.com
                    gblankinship@fbfglaw.com
                    jsardesaigrant@fbfglaw.com
                    dosborne@fbfglaw.com

                    *Counsel for Plaintiff and the Putative Class*

14