**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JANICE NADEAU, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>EQUITY RESIDENTIAL PROPERTIES MANAGEMENT CORPORATION,<br><br>    Defendant. | Case No. 7:16-cv-7986-VB-LMS<br><br>ORAL ARGUMENT REQUESTED |

**PLAINTIFF'S SUR-REPLY
IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION**

## **TABLE OF CONTENTS**

**Table of Contents** ..................................................................................................................... i

**Table of Authorities** ................................................................................................................ ii

**Preliminary Statement** ............................................................................................................. 1

**Sur-Reply Argument** ................................................................................................................ 2

    I.    Defendant's Attack On Plaintiff's Demand For Arbitration Should Have Been Made In Arbitration, And The Dispute Alleged In Plaintiff's Demand Falls Within The Scope Of The Arbitration Agreement Defendant Now Seeks To Enforce. ........................................ 2

    II.   Defendant Waived Its Right To Arbitration. ..................................................................... 6

    III.  Defendant's Willingness Now To Arbitrate Is Too Little, Too Late. ................................ 9

**Conclusion** ............................................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**

*Downing v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   725 F.2d 192 (2d Cir. 1984) .................................................................................................. 9

*Brown v. Dillard's, Inc.*,
   430 F.3d 1004 (9th Cir. 2005) ..................................................................................... 2, 7, 8, 9

*In re Currency Fee Antitrust Litig.*,
   229 F.R.D. 57 (S.D.N.Y. 2005) .............................................................................................. 7

*LG Elecs., Inc. v. Wi-Lan USA, Inc.*,
   623 F. App'x 568 (2d Cir. 2015) ............................................................................................ 7

*Media Edge v. W.B. Doner, Inc.*,
   112 F. Supp. 2d 383 (S.D.N.Y 2000) ..................................................................................... 7

*Republic of Ecuador v. Chevron Corp.*,
   638 F.3d 384 (2d Cir. 2011) ................................................................................................... 5

*Richard Nathan Corp v. Diacon-Zadeh*,
   101 F. Supp. 428 (S.D.N.Y. 1951) ......................................................................................... 7

*Sealed Plaintiff v. Sealed Defendant*,
   537 F.3d 185 (2d Cir. 2008) ................................................................................................... 3

**PRELIMINARY STATEMENT**

The novel arguments in Defendant's Reply (Dkt. No. 29) neither justify its refusal to engage in arbitration, nor free it from the consequences of its refusal.  The American Arbitration Association ("AAA") accepted Plaintiff's Demand for Arbitration (the "Demand") as valid.  If Defendant disagreed with the AAA's decision, it should have participated in arbitration and immediately requested that the AAA or the presiding arbitrator dismiss Plaintiff's Demand. Instead, Defendant refused to participate in arbitration, and the AAA, after repeatedly demanding that Defendant participate, administratively closed Ms. Nadeau's case, which forced her to bring the instant case in Court.  Under these circumstances, Defendant cannot now compel arbitration.

Moreover, Defendant's assertion Plaintiff's that Demand was somehow invalid or provided insufficient notice is without merit and would have been rejected if Defendant had brought it in arbitration, the appropriate forum.  Plaintiff's Demand clearly alleged a dispute relating to her employment, thus falling within the scope of the Arbitration Agreement.  The applicable arbitration rules state that arbitration is less technically rigorous than court and that a Demand need provide no more than a basic statement of a claim.  Plaintiff is a non-lawyer and her Demand specifically referenced "labor laws" while challenging Defendant's reprimand because Defendant improperly contacted her by text messages during off-work hours.

Plaintiff has more than adequately met her burden for establishing that Defendant waived its right to arbitration.  Contrary to Defendant's novel argument (for which it offers no authority), the language in Plaintiff's Demand need not allege the exact same claims as those now pending before this Court in order for Defendant to have the requisite knowledge that it was waiving its right to compel arbitration. Moreover, Plaintiff's claims in the Demand and before this Court all ultimately arise as a result of Defendant's unlawful policy of forcing Ms. Nadeau and her colleagues to work off-the-clock.

Finally, the authority proffered by Plaintiff is on all fours. Defendant's untimely offer to arbitrate, which only took place after Ms. Nadeau retained counsel and initiated litigation, does not allow Defendant to evade this Court's jurisdiction. Because of Defendant's admittedly willful failure "to engage" in the arbitration initiated by Plaintiff (Reply at 1), Defendant has waived its right to compel arbitration of the claims now before this Court, all of which undeniably arise out of the same acts and occurrences as those relating to the claims asserted in Plaintiff's Demand.

## SUR-REPLY ARGUMENT

I.   **Defendant's Attack On Plaintiff's Demand For Arbitration Should Have Been Made In Arbitration, And The Dispute Alleged In Plaintiff's Demand Falls Within The Scope Of The Arbitration Agreement Defendant Now Seeks To Enforce.**

Defendant attempts to justify its failure to engage in the arbitration by arguing that the dispute raised by Plaintiff in her Demand falls outside the scope of the Arbitration Agreement. (Reply at 2-4.) If Defendant truly felt that Ms. Nadeau's claim was improper, it was fully within its rights to engage in arbitration and immediately ask the arbitrator to dismiss Ms. Nadeau's claim. (*See* Nadeau Decl., Ex. 1, Dkt. No. 27-1, AAA Rules at 8, Rule 6 (providing that the Arbitrator may dismiss certain claim at the outset).) *See also Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1010 (9th Cir. 2005) ("If Dillard's believed Brown's claim was meritless, its proper course of action was to make that argument in arbitration."). Indeed, if Defendant had convinced the arbitrator that Ms. Nadeau's claims were frivolous, the arbitrator could have shifted the entire cost of arbitration to Ms. Nadeau. (*See* AAA Rules at 33.) However, Defendant had no authority to engage in self-help by simply refusing to participate in arbitration.

Furthermore, Defendant's challenges to the procedural sufficiency or intelligibility of the Demand are without merit. Indeed, the AAA Rules outlining the procedure for initiation of

2

arbitration provide that the initiating party file a demand and that the demand need merely set forth "a brief statement of the nature of the dispute." (AAA Rules at 7, Rule 4.b.i.1.) Plaintiff's failure to mark off boxes on the AAA's demand form stating whether she believed her claim to involve statutory or non-statutory rights (Reply at 2-3) does nothing to make her claim procedurally deficient. Indeed, Defendant conveniently neglects to mention that, in her Demand, Plaintiff requested an arbitrator "[s]avvy with labor laws[] in NY," clearly indicating a belief that her claims implicated statutory rights. (*See* Reply Affirmation of Amy J. Traub, Esq. ("Traub Aff.), Ex. A, Dkt. No. 30-1, Demand for Arbitration (the "Demand").) Nor does the unsigned or undated nature of the Demand render it procedurally improper. Nowhere is there a provision in the AAA Rules requiring that a demand must detail all the factual bases for a claim, nor a requirement that a demand filed be signed or dated. Rather, the AAA Rules explicitly state that "[t]he form of any filing in these rules shall not be subject to technical pleading requirements." (AAA Rules at 8, Rule 4.c.)[1] Importantly, the AAA itself accepted Ms. Nadeau's demand as procedurally proper.

Moreover, Plaintiff's claim in the Demand falls well-within the "types" of employment-related disputes subject to binding arbitration pursuant to the Arbitration Agreement. Plaintiff asserted that she had been wrongfully formally reprimanded for using foul language when she complained about Defendant's policy of forcing her to work off-the-clock without pay. (*See* Demand.) She further stated that labor laws were implicated. (*Id.*) The plain text of the Arbitration Agreement subjects "*[a]ny* claim, controversy, or dispute you may have with

---

[1] The standards are even more liberal where, as was the case at the time Plaintiff filed her Demand, the claimant is unrepresented. *Cf. Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that when a plaintiff proceeds *pro se*, a court is obliged to construe his pleadings liberally." (internal quotations and alterations omitted)).

3

Equity . . . arising from or relating to your . . . employment" to binding arbitration. (*See* Declaration of Mary Pawlisa ("Pawlisa Decl."), Ex. B, Dkt. No. 18-2, Arbitration Agreement at 2 (emphasis added).) Accordingly, Plaintiff's claim in the Demand falls well-within the scope of the Arbitration Agreement, and none of the listed exclusions to this scope[2] applied to her claim at the time the Demand was filed.[3]

Defendant also argues that the Demand "is devoid of allegations, claims, or complaints of the nature alleged in the suit." (Reply at 2.) Not so. Plaintiff's Demand encompasses the claims alleged in this action that were available to Plaintiff at the time she filed her Demand.[4] First, that she filed the Demand at all necessarily indicates that the she believed the formal reprimand was improper. Second, Plaintiff stated that the reprimand was improper because of the circumstances surrounding her use of foul language -- specifically, that the language was used in a communication with her manager "after [Plaintiff's] manager[,] *while [Plaintiff] was off*[,] texted [Plaintiff] *first* to explain [that Plaintiff] had to go to what [Plaintiff's manager] said was a mandatory outing." (*See* Demand (emphasis added).) Fairly read, Plaintiff's Demand articulates a claim that Defendant's reprimand was improper because Defendant initiated the text

---

[2] The Arbitration Agreement excludes "claims for workers' compensation benefits, unemployment compensation benefits, and claims, controversies, or disputes arising out of job elimination or in which Equity seeks temporary or permanent injunctive relief relating to theft or misuse of trade secrets, confidential or proprietary information or violation of a non-compete or non-solicitation agreement." (Arbitration Agreement at 2.)

[3] Although at the time of the filing of the Demand she did not have a claim for retaliatory termination, Plaintiff does now and has alleged such a claim in this action. (*See*, *e.g.*, Dkt. No. 1, Compl. ¶¶ 85-108 (alleging retaliation claims under the Fair Labor Standards Act § 215 and the New York Labor Law § 215).) Such claims are explicitly outside the scope of the Arbitration Agreement, so it is difficult to understand how Defendant can seek to compel Ms. Nadeau to arbitrate them. (*See* Arbitration Agreement at 2 (excluding from the scope of the agreement "claims, controversies, or disputes arising out of job elimination").)

[4] *See* note 3, *supra*.

conversation ("texted me first"), after working hours ("while I was off"), regarding an off-the-clock "mandatory outing." Her claims in this action undeniably arise out of these same facts -- specifically, that Plaintiff was obliged to respond to text messages during non-working hours and to work off-the-clock without compensation. (*See*, *e.g.*, Dkt. No. 1, Compl. ¶ 11 ("Defendant regularly required employees, including Plaintiff, to read and respond to text messages and phone calls before and after their scheduled work hours.") & ¶ 12 ("Defendant knowingly permitted, encouraged, and required Plaintiff to work off-the-clock without properly tracking this work or paying her any wages for it, including overtime wages.").) [5]

Accordingly, Defendant's argument that "it did not agree to arbitrate the propriety of a write up for misbehavior" (Reply at 4) borders on the frivolous, given the plain language of the Arbitration Agreement, in which it agreed to arbitrate *any* dispute arising from or relating to Plaintiff's employment.[6] Because the Demand was procedurally proper, Defendant was obliged

---

[5] Defendant offers no authority for its additional, and also novel, argument that its internal, informal dispute resolution process provides the exclusive "path for seeking satisfaction [of her claim]." (Reply at 3.) Indeed, the less formal procedures available to Plaintiff were voluntary. (*See* Pawlisa Decl., Ex. 3, Dkt. No. 18-3, 2015 Employee Handbook, at p. 12 ("When you have a job-related issue, *if possible* you *should* first discuss it with your supervisor. If you are not comfortable speaking with your supervisor or if you are not satisfied after this discussion, then you *should* arrange to speak with either Human Resources or with a manager at the next level. If the issue remains unresolved, you *are encouraged* to discuss it with progressively higher levels of management." (emphasis added)).) And nowhere does the Employee Handbook state that this internal process must be exhausted prior to the initiation of a claim pursuant to the Arbitration Agreement that bound both Plaintiff and Defendant. (*Id.*) It is not for Defendant to unilaterally cherry pick which "indignities" (Reply at 3) it deems worthy of bringing straight to arbitration and which require exhaustion of its voluntary, internal dispute resolution process prior to arbitration. Rather, Plaintiff was free to bring her claim in either forum, and she chose arbitration, where "[she] prefer[ed] to have everything documented and addressed." (Nadeau Decl. ¶ 21 & Ex. 4, Dkt. No. 27-4, Correspondence Between Equity and Janice Nadeau at 2.)

[6] Defendant's reliance on *Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384 (2d Cir. 2011), for the proposition that it "cannot be required to submit to arbitration any dispute which it has not agreed to submit" (Reply at 3 (quoting *Republic of Ecuador*)) is misplaced. In *Republic of Ecuador*, the Court was addressing the validity of the arbitration agreement itself. *See* 638 F.3d at 392 ("[W]e must first resolve the question of the very existence of the contract embodying the

5

to pay the AAA's fee and arbitrate.  By willfully refusing to do so, Defendant breached the Arbitration Agreement and waived its ability to compel arbitration of the claims before this Court.

## II. <u>**Defendant Waived Its Right To Arbitration.**</u>

Defendant argues that it cannot have waived its right to compel arbitration of Plaintiff's claims because it did not know that it was waiving them.  (Reply at 4-5.)  However, Defendant knew Ms. Nadeau had initiated an arbitration involving "labor laws" and an assertion that Defendant forced her to respond to text messages while off-the-clock (the facts underlying these claims are essentially the same as those alleged in the action before this Court and arose from the same acts and occurrences).  Defendant certainly knew that it had the right to compel arbitration of Plaintiff's claims if Plaintiff had brought those claims in a non-arbitral forum.  When Plaintiff did, in fact, bring those claims in Defendant's preferred arbitral forum, it acted inconsistently with that right by "declin[ing]to engage" (Reply at 1) in the arbitration process.

Defendant's purported ignorance about the nature of Ms. Nadeau's claim is belied by its conduct while her arbitration was pending.  Instead of paying the AAA's fee and participating in arbitration, Lisa Leib, Defendant's Vice-President-Legal, wrote Ms. Nadeau offering to "settle this case [the arbitration] and pay you the cost of the AAA filing . . . if you sign a full release of all your claims against Equity relating to your employment and a full and final dismissal of all these claims."  (Nadeau Decl., Ex. 4, Dkt. No. 27-4, Correspondence Between Equity and Janice Nadeau at 1-2.)  Tellingly, during these communications, Ms. Leib never indicated that Ms.

---

arbitration clause.  Only after ensuring that a valid arbitration agreement exists may we proceed to determine whether that agreement requires the arbitration of Ecuador's claims.").  Here, there is no dispute that a valid arbitration agreement exists between the parties.

6

Nadeau's Demand was improper or asserted that Equity was unable to understand the basis of her claims.

Indeed, contrary to Defendant's novel argument (for which it offers no authority), the language in Plaintiff's Demand need not allege claims that are the "exact same" (Reply at 4) as those now pending before this Court in order for it to have the requisite knowledge that it was waiving its right to compel arbitration of those issues pursuant to its Arbitration Agreement.[7] Defendant cannot argue that it retained its right to compel arbitration of Plaintiff's claims, which arise out of the same events as those underlying her Demand for Arbitration, simply because it allegedly remained ignorant of the details of her claims by willfully refusing to engage in arbitration.

Moreover, Defendant's arguments that Plaintiff has failed to establish prejudice as a result of Defendant's waiver are without merit, and cases cited by Defendant are inapposite.  In both *Media Edge v. W.B. Doner, Inc.*, 112 F. Supp. 2d 383 (S.D.N.Y 2000), and *LG Elecs., Inc. v. Wi-Lan USA, Inc.*, 623 F. App'x 568 (2d Cir. 2015), the court addressed claims of waiver in the context of parties who had participated in litigation in court prior to a motion by a party to compel arbitration.  Unlike here, neither case involved an attempted pre-litigation arbitration that the party seeking to compel arbitration rebuffed.  Here, the prejudice stems from entirely from Defendant's own willful refusal to participate in the properly initiated arbitration, and, as the Ninth Circuit held, this prejudice is sufficient to find waiver.  *See Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1013 (9th Cir. 2005) ("Dillard's does not cite a case in which costs have been

---

[7] In both cases cited by Defendants -- *Richard Nathan Corp v. Diacon-Zadeh*, 101 F. Supp. 428 (S.D.N.Y. 1951), and *In re Currency Fee Antitrust Litig.*, 229 F.R.D. 57 (S.D.N.Y. 2005) -- the allegation of waiver was based on a party's having asserted its right to compel arbitration *after* having participated in litigation in court, unlike here, where Defendant willfully refused to engage in arbitration *prior* to the initiation of court proceedings.

7

incurred by the plaintiff due to the defendant's refusal to participate in properly initiated arbitration proceedings.  Brown did not choose to litigate.  She chose to arbitrate, and when she was rebuffed by Dillard's, she sued as a last resort.  In this circumstance, we have no trouble concluding that the delay and costs incurred by Brown are prejudicial for the purpose of waiver analysis.").

Accordingly, *Dillard's* is, indeed, on all fours.  In *Dillard's*, the Ninth Circuit unequivocally held that an employer who fails to participate in an employee-initiated arbitration cannot subsequently compel arbitration if the employee then files a lawsuit.  *See* 430 F.3d 1004.  Defendant claims that *Dillard's* is distinguishable on the basis that the arbitration demand in *Dillard's* was properly initiated and stated a claim covered by the arbitration agreement, while Plaintiff's arbitration was improperly initiated and did not state a claim.  (Reply at 6.)  However, in *Dillard's*, the Ninth Circuit explicitly rejected defendant's untimely attack on plaintiff's arbitration submission:

> Dillard's contended that their refusal to arbitrate the 'claims' made in Plaintiff's July 2002 Arbitration Notice was not 'inconsistent' with the right to arbitrate Plaintiff's claims in the Complaint because the prior claims merely alleged that Defendants had acted unfairly in terminating her and thus did not contain a colorable claim subject to arbitration. . . . *If Dillard's believed Brown's claim was meritless, its proper course of action was to make that argument in arbitration.* Instead, Dillard's refused to participate in the arbitration process at all.

*Id.* at 1010 (certain internal quotations and alterations omitted) (emphasis added).  Furthermore, as articulated above, Plaintiff's Demand stated a claim covered by the arbitration agreement and was, in no material way, procedurally deficient.[8]

---

[8] Indeed, Ms. Brown's demand for arbitration against Dillard's was, much as here, a bare-bones statement of her claim.  *See Dillard's*, 430 F.3d at 1008 (describing Ms. Brown's notice of intent to arbitrate, in which she described the nature of her dispute in one sentence).

Defendant also attempts to distinguish *Dillard's* by arguing that the Second and Ninth Circuit apply different standards to motions to compel arbitration. (*See* Reply at 5.) But the difference in standards between the Second and Ninth Circuits is immaterial, as Plaintiff has easily provided testimonial and documentary evidence sufficient to satisfy the Second Circuit's standard, and Defendant has not. (*See*, *e.g.*, Dkt. No. 27, Nadeau Decl.)[9]

### III. Defendant's Willingness Now To Arbitrate Is Too Little, Too Late.

The AAA's willingness to reopen the arbitration, despite its prior assertion that it would not do so, does not undo Defendant's waiver or the consequences thereof. (*Cf.* Reply at 7.) Indeed, the AAA's correspondence indicating it could reopen the arbitration if both parties now consented was dated October 27, 2016 (Traub Aff., Ex. B, Dkt. No. 30-2, December 2, 2016 Email from the AAA to Parties), well after Plaintiff filed her Complaint on October 12, 2016 (Dkt. No. 1, Compl.), and even further after July 18, 2016, when the AAA "closed the file" because "the employer has failed to submit payment" (Nadeau Decl., Ex. 5, Dkt. No. 27-5, July 18, 2016 Correspondence from the AAA to Parties). This underscores that Defendant only decided to arbitrate after originally refusing to arbitrate and, thereby, forcing Plaintiff to litigate.

Defendant cannot have its cake and eat it too. By refusing to arbitrate, Defendant breached the Arbitration Agreement and waived its right to compel arbitration. It cannot undo

---

[9] Defendant's attempt to distinguish *Downing v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 725 F.2d 192 (2d Cir. 1984), is unpersuasive. (Reply at 6.) In *Downing*, a former employee sought to compel arbitration under Section 4 of the Federal Arbitration Act because Merrill Lynch allegedly refused to arbitrate pursuant to its arbitration agreement. *See* 725 F.2d at 194. The Court found that it could not compel arbitration because "[r]elief under Section 4 . . . is available only to persons aggrieved by the refusal of another to arbitrate under a written agreement for arbitration" and there was no evidence that Merrill Lynch had actually so refused. *Id.* at 195. Accordingly, Plaintiff offered *Downing* in support of her argument that Defendant has breached its agreement to arbitrate because of the *Downing* Court's observation that, "[u]nless Merrill Lynch commences litigation or is ordered to arbitrate this dispute . . . and fails to do so, it is not in default of any arbitration agreement it may have with Downing." 725 F.2d at 195.

this decision simply because it now decides it would rather not appear before this Court. "[W]hen an employer enters into an agreement requiring its employees to arbitrate, it must participate in the process or lose its right to arbitrate." *Dillard's*, 430 F.3d at 1013.

## CONCLUSION

Simply put, Defendant may not compel arbitration after having previously refused to participate in a properly initiated arbitration. Accordingly, Defendant's Motion has little merit, and Plaintiff respectfully requests that the Court deny it.

Dated: January 18, 2016
White Plains, New York

Respectfully submitted,

**FINKELSTEIN, BLANKINSHIP,
FREI-PEARSON & GARBER, LLP**

By: */s/ Jeremiah Frei-Pearson*
Jeremiah Frei-Pearson
455 Hamilton Avenue, Suite 605
White Plains, New York 10601
Tel: (914) 298-3281
Fax: (914) 824-1561
jfrei-pearson@fbfglaw.com
*Counsel for Plaintiff and the Putative Class*