UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
JANICE NADEAU, Individually and on behalf of
all others similarly situated,

                 Plaintiff,

v.

EQUITY RESIDENTIAL PROPERTIES
MANAGEMENT CORPORATION,

                 Defendant.
--------------------------------------------------------------x

**OPINION AND ORDER**

16 CV 7986 (VB)

Briccetti, J.:

    Plaintiff Janice Nadeau brings this action, individually and on behalf of all others similarly situated, against defendant Equity Residential Properties Management Corporation, claiming violations of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq., New York Labor Law, Art. 19 § 650 et seq., and the New York Codes, Rules and Regulations § 142-2.

    Before the Court is defendant's motion to compel arbitration and stay this action pending arbitration, pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq. (Doc. #16).

    For the following reasons, the motion is DENIED.

    The Court has jurisdiction under 28 U.S.C. §§ 1331, 1367.

## BACKGROUND

    For the purpose of ruling on this motion, the Court considers only the pleadings and evidence relevant to defendant's motion to compel arbitration and stay this action.

    Plaintiff worked full-time as a customer support assistant for defendant from February 24, 2015, to June 10, 2016. Defendant required plaintiff sign an arbitration agreement (the "Agreement" or the "Arbitration Agreement") prior to her employment, which states in relevant part:

1

> *Any claim, controversy, or dispute you may have with Equity* or any of its past, present or future employees, agents, directors, trustees or shareholders, or which Equity may have with you, *arising from or relating to your* application for employment, *employment*, the termination of your employment, or any post-employment conduct or events, excluding claims for workers' compensation benefits, unemployment compensation benefits, and claims, controversies, or disputes arising out of job elimination or in which Equity seeks temporary or permanent injunctive relief relating to theft or misuse of trade secrets, confidential or proprietary information or violation of a non-compete or non-solicitation agreement, *will be finally settled by binding arbitration*. Claims which must be settled by binding arbitration include, but are not limited to, claims arising under . . . the Family And Medical Leave Act, . . . any amendments to these acts, and any state or local employment related statute or ordinance, and any future federal, state or local employment related statutes or ordinances.

(Pawlisa Decl. Ex. B) (emphasis added). The Agreement further provides: "Filing and administrative fees of the arbitration will be paid by Equity, as will the fees and other expenses of the arbitrator." (Id.).

Plaintiff avers defendant regularly required her "to read and respond to text messages and phone calls before and after . . . scheduled work hours" (Nadeau Decl. ¶ 6) without properly recording this time or compensating her for this work.

In May 2016, plaintiff received a text message from her supervisor "instructing [her] to attend a company event off-the-clock." (Nadeau Decl. ¶ 11). Plaintiff responded to this text message using vulgar language to express her displeasure about defendant requiring her to work off-the-clock without compensation. In response, defendant "issued an Employee Counseling Summary Report alleging that [plaintiff] had violated company policy by communicating with her supervisor by text message . . . and using inappropriate language." (Id. ¶ 12).

Subsequently, plaintiff filed an arbitration demand (the "Demand") with the American Arbitration Association ("AAA"), the designated arbitrator under the Agreement. In the Demand, plaintiff described the nature of her claim, stating: "Received a formal 'write up;' (co[u]nseling) because my language used in a text after my manager while I was off tex[]ted me

2

first to explain I had to go to what she said was a mandatory outing." (Traub Affirm. Ex. A). Plaintiff requested an arbitrator "sa[v]vy with labor laws, in NYC." (Id.).

On June 3, 2016, the AAA informed plaintiff it had not yet received defendant's filing fees for the arbitration, but that it had requested payment from defendant by June 6, 2016. (Nadeau Decl. ¶ 16).

On June 10, 2016, defendant terminated plaintiff's employment. Plaintiff avers she believes she "was fired in retaliation for complaining about Equity's unlawful wage policies and for initiating arbitration before the AAA." (Nadeau Decl. ¶ 17).

On June 13, 2016, plaintiff and Lisa Leib, a vice president in defendant's legal department, spoke via telephone and discussed the Demand. (Nadeau Decl. ¶ 18). On June 22, 2016, Leib emailed plaintiff, offering to settle the case by paying to plaintiff the AAA fees in exchange for a release of all plaintiff's claims. (Id. ¶ 20). Plaintiff rejected this offer, insisted on arbitration, and requested defendant pay the AAA fees. (Id. ¶ 21).

On June 23, 2016, Leib emailed plaintiff, asking "what is your counter offer?" Plaintiff responded that she "prefer[s] to have everything documented and addressed through AAA." Leib then asked, "Are you saying you do not have any number that you would settle this case before we go forward in the AAA? I just want to make sure I understand your position." Plaintiff responded, "I'm saying that under the circumstances, I don't feel comfortable agreeing to a number without representation." Leib replied, "The AAA does not represent you. They are a neutral third-party that will adjudicate this case. You should talk to them to make sure you understand their role. If you want representation for this case you will have to find your own attorney." Plaintiff insisted on arbitration and responded, "I am very aware what the AAA role

3

will be and I want to resolve with a mediation and . . . unbiased third party case manager there to reach a sound agreement." (Nadeau Decl. Ex. 4).

On July 18, 2016, plaintiff received a letter from the AAA stating that because defendant had "failed to submit payment as requested in accordance with our Employment Arbitration Rules . . ., we have administratively closed our file on this matter." (Nadeau Decl. Ex. 5).

In a complaint filed October 12, 2016, plaintiff claimed multiple violations of the Fair Labor Standards Act, the New York Labor Law, and the New York Code, Rules and Regulations, for requiring employees to work off-the-clock without compensation, failing to pay overtime wages, failing to provide accurate wage statements, and retaliating against plaintiff for initiating arbitration. In response, defendant moved to compel arbitration and for a stay.

## DISCUSSION

I. Standard of Review

"In the context of motions to compel arbitration brought under the Federal Arbitration Act, the court applies a standard similar to that applicable for a motion for summary judgment." Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir. 2003) (citation omitted). Accordingly, the Court must grant a motion to compel arbitration if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Celotex Corp v. Catrett, 477 U.S. 317, 322 (1986).

"A party to an arbitration agreement seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid." Harrington v. Atl. Sounding Co., 602 F.3d 113, 124 (2d Cir. 2010).

4

II. Enforceability of the Arbitration Agreement

"The FAA was enacted in 1925 in response to widespread judicial hostility to arbitration agreements." AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011). The FAA "establishe[d] that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24–25 (1983). Thus, the FAA reflects "both a liberal federal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract. In line with these principles, courts must place arbitration agreements on equal footing with other contracts." AT&T Mobility LLC v. Concepcion, 563 U.S. at 339 (internal quotation marks and citations omitted).

The FAA provides that otherwise-valid arbitration agreements can be rendered unenforceable based "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "Thus, a party seeking to avoid enforcement of an arbitration agreement can . . . invoke a defense that would be available to a party seeking to avoid the enforcement of any contract." Brown v. Dillard's, Inc., 430 F.3d 1004, 1010 (9th Cir. 2005) (explaining that state laws related specifically to arbitration agreements are not a valid basis on which to render an arbitration agreement unenforceable). Under New York law, when a party to a contract materially breaches that contract, it cannot then enforce that contract against a non-breaching party. See, e.g., In re Lavigne, 114 F.3d 379, 387 (2d Cir. 1997). A breach is material when it "substantially defeats the purpose of that contract." Id.

Plaintiff argues defendant cannot compel arbitration because defendant breached the Agreement by refusing to arbitrate before the AAA. In the alternative, plaintiff argues defendant waived its right to compel arbitration by refusing to arbitrate.

5

The Court agrees defendant materially breached the Arbitration Agreement and therefore cannot use the Agreement to compel arbitration.[1] To hold otherwise "would set up a perverse incentive scheme," contrary to the FAA and common sense:

> Employers like [defendant] would have an incentive to refuse to arbitrate claims brought by employees in the hope that the frustrated employees would simply abandon them. This tactic would be costless to employers if they were allowed to compel arbitration whenever a frustrated but persistent employee eventually initiated litigation. [The Court] decline[s] to adopt a rule that would encourage companies to refuse to participate in properly initiated arbitration proceedings.

Brown v. Dillard's, Inc., 430 F.3d at 1012 (citation omitted). Thus, "when an employer enters into an arbitration agreement with its employees, it must itself participate in properly initiated arbitration proceedings or forego its right to compel arbitration. [Defendant] cannot compel [plaintiff] to honor an arbitration agreement of which it is itself in material breach." Id. at 1006.

Defendant argues it did not breach the Agreement[2] because the Demand (i) was deficient and failed to properly initiate arbitration, and (ii) addressed a different claim that is not covered by the Agreement. The Court addresses each argument in turn.

A. Sufficiency of the Demand

Defendant argues that the Demand was deficient because plaintiff failed to sign and date the Demand, and because she failed to check a box regarding whether her claims involved statutorily protected rights. Defendant further argues that because of these deficiencies, plaintiff did not initiate arbitration, and therefore defendant did not breach the Agreement by refusing to arbitrate.

The Court disagrees.

---

[1] Because the Court denies defendant's motion to compel based on defendant's breach of the Arbitration Agreement, it need not address plaintiff's waiver argument.

[2] Defendant does not argue that any breach, if it occurred, was immaterial.

6

Defendant provides no authority for the proposition that plaintiff was required to satisfy various technical pleading conditions to initiate arbitration. Further, the Court is not aware of anything in the Arbitration Agreement, defendant's employee handbook ("defendant's Handbook"), the AAA's Employment Arbitration Rules and Mediation Procedures (the "AAA Rules"), the FAA, or any other law imposing such requirements. Indeed, to the extent these sources address the requirements of pleadings in arbitration demands, these sources suggest the opposite conclusion; that is, that arbitration demands are not subject to formalistic requirements, nor are they comparable to pleadings in federal court. The AAA Rules state that such technical failures are immaterial: "The form of any filing in these rules shall not be subject to technical pleading requirements." (Nadeau Decl. Ex. 1 at 8). Perhaps most importantly, the AAA deemed the Demand adequate to initiate an arbitration, and defendant fails to persuade the Court why it should hold plaintiff's Demand to a higher standard than that used by the AAA.

Accordingly, the Demand triggered defendant's obligation to arbitrate despite any technical deficiencies contained therein, and therefore defendant breached the Arbitration Agreement by its refusal to arbitrate.

B. <u>Claims Asserted in the Demand</u>

Defendant asserts two arguments regarding the claims asserted in the Demand in support of its position that it did not breach the Arbitration Agreement.

First, defendant argues the Demand's asserted claims regarding plaintiff's formal write-up are not arbitrable, since the Agreement applies only to "certain types of employment related disputes," (Def.'s Reply at 3 (quoting Pawlisa Decl. Ex. B)). Because, defendant argues, the Demand did not raise arbitrable issues, its refusal to arbitrate did not breach the Agreement.

Defendant is wrong.

Defendant mistakenly assumes this is the proper forum to challenge the arbitrability of the Demand's asserted claims. The appropriate forum for such an argument is before the AAA, where defendant could have moved to dismiss the arbitration, not federal court. See Brown v. Dillard's, Inc., 430 F.3d at 1010. "Instead, [defendant] refused to participate in the arbitration process at all, [and defendant's] breach of its obligations under the arbitration agreement deprives it of the right to enforce that agreement." Id.

Defendant is also wrong that the claims asserted in the Demand are outside the scope of the Arbitration Agreement. Arbitration clauses are construed "as broadly as possible." David L. Threlkeld & Co. v. Metallgesellschaft Ltd. (London), 923 F.2d 245, 250 (2d Cir. 1991) (quoting S.A. Mineracao da Trindade–Samitri v. Utah Int'l, Inc., 745 F.2d 190, 194 (2d Cir. 1984). Moreover, there is a "strong federal policy favoring arbitration as an alternative means of dispute resolution." State of N.Y. v. Oneida Indian Nation of N.Y., 90 F.3d 58, 61 (2d Cir. 1996). It follows that ambiguity regarding the arbitrability of a claim is resolved in favor of arbitrability. Id. Thus, absent an "express provision excluding a particular grievance from arbitration, . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 654 (1986) (quoting United Steelworkers of Am. v. Warrior & Gulf Nav. Co., 363 U.S. 574, 584–85 (1960)).

The Agreement provides that the "types of employment-related disputes" subject to arbitration are, among other things, "[a]ny claim, controversy, or dispute you may have with Equity . . . arising from or relating to your . . . employment, the termination of your employment, or any post-employment conduct or events."[3] (Pawlisa Decl. Ex. B). This expansive definition

---

[3] The Agreement provides exceptions, but defendant does not argue any are applicable.

of arbitrable disputes unambiguously encompasses plaintiff's claims regarding discipline for complaining about the terms and requirements of her employment.

Defendant also argues that pursuant to defendant's Handbook, "plaintiff acknowledged at the outset of her employment a less formal and less costly procedure existed for other indignities—communication first with a supervisor and, if unsuccessful, with higher levels of management or with Human Resources." (Def.'s Reply at 3 (citation omitted)). Although such procedures may exist, their existence does not require their use, and defendant provides no basis to conclude otherwise.

Second, defendant argues the Demand raised different claims than the claims asserted here.

The Court disagrees both that the Demand raised claims distinct from those plaintiff raises here, and that it would change the impact of defendant's breach of the Arbitration Agreement, even if the Demand did raise different claims.

Defendant argues that "the Demand is devoid of any allegations, claims or complaints of the nature alleged in this suit" because plaintiff merely mentions "a single 'write up' [p]laintiff received for 'language used in a text,'" and that plaintiff failed to check the boxes as to whether plaintiff's rights were statutorily protected. (Def.'s Br. at 2 (quoting Traub Affirm. Ex. A)).

Although the Demand does not raise the exact issues articulated in the complaint, such precision is not required, and the Demand clearly pertained to the same issues and underlying events. Indeed, the Demand states that plaintiff was in a dispute with her manager about having to attend a mandatory work function while not being paid. And while the Demand also states that plaintiff's claims related to the "formal 'write up'" she received as a consequence of her inappropriate language, the Court sees no reason to limit the Demand to that issue. Defendant's

9

argument asks this Court to construe narrowly the allegations in the Demand, but provides no basis to do so.

More importantly, even if plaintiff's claims here were inconsistent with the Demand, defendant completely fails to explain how that inconsistency would ameliorate or cure defendant's breach of the Arbitration Agreement. As discussed above, plaintiff's claims regarding the "write up" were arbitrable under the Agreement, and defendant breached the Agreement by refusing to arbitrate.

Accordingly, defendant's refusal to arbitrate constitutes a material breach of the Arbitration Agreement, and therefore defendant cannot compel arbitration.

## **CONCLUSION**

Defendant's motion to compel arbitration and to stay this action is DENIED.

The Court's Order of November 23, 2016, staying the Mediation Referral Order (Doc. #8) pending a decision on the instant motion (Doc. #23) is VACATED. The parties are directed to contact the assigned mediator and proceed promptly to mediation in accordance with the Mediation Referral Order.

The initial conference originally scheduled for February 2, 2017 (Doc. #9), is re-scheduled for July 28, 2017, at 9:30 a.m.

The Clerk is instructed to terminate the motion. (Doc. #16).

Dated: May 4, 2017
      White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge