## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

JANICE NADEAU, individually and on
behalf of all others similarly situated,

                Plaintiff,

     v.

EQUITY RESIDENTIAL PROPERTIES
MANAGEMENT CORPORATION,

             Defendant.

Case No. 7:16-cv-7986-VB-LMS

## PLAINTIFF'S MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANT'S MOTION
## <u>TO STRIKE CLASS AND COLLECTIVE ACTION ALLEGATIONS</u>

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS ................................................................................................... 2

ARGUMENT ........................................................................................................................ 3

I.      Legal Standard ......................................................................................................... 3

        A.      Motions To Strike Class And
                Collective Action Claims Are Strongly Disfavored ......................................... 3

        B.      The Summary Judgment Standard
                Applies To Questions Of Arbitrability .......................................................... 4

II.     Defendant's Motion To Strike Fails To
        Overcome The Strong Presumption Against Such Motions ........................................ 4

        A.      There Are Genuine Disputes As To Material Facts
                Regarding Defendant's Arbitration Agreements And
                Defendant Has Provided No Evidence To Resolve Them ................................ 4

        B.      Defendant Admits That Some Putative Class
                Members Are Not Subject To The Arbitration Agreement ............................. 10

        C.      Defendant Breached And Waived Its Arbitration Agreement ......................... 10

        D.      Defendant's Cited Cases Are Uniformly Inapposite ..................................... 13

CONCLUSION .................................................................................................................. 14

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Ali v. Sugarland Petroleum,*
    No. 09-170, 2009 WL 5173508 (S.D. Tex. Dec. 22, 2009) ...................................................... 7, 9

*Barkley v. Pizza Hut of America, Inc.,*
    No. 14-376, 2014 WL 3908197 (M.D. Fl. Aug. 11, 2014) ...................................................... 5, 6

*Belfiore v. Procter & Gamble Co.,*
    No. 14-4090, 2015 WL 1402313 (E.D.N.Y. Mar. 20, 2015) ...................................................... 3

*Bellman v. i3Carbon, LLC,*
    563 Fed. Appx. 608 (10th Cir. 2014) ...................................................... 4

*Bensadoun v. Jobe-Riat,*
    316 F.3d 171 (2d Cir. 2003) ...................................................... 4, 7

*Brennan v. Bally Total Fitness,*
    198 F. Supp. 2d 377 (S.D.N.Y. 2002) ...................................................... 8

*Brown v. Dillard's, Inc.,*
    430 F.3d 1004 (9th Cir. 2005) ...................................................... 11, 12

*Campbell v. Pincher's Beach Bar Grill Inc.,*
    No. 15-695, 2016 WL 3626219 (M.D. Fl. July 7, 2016) ...................................................... 9

*Carvant Financial LLC v. Autoguard Advantage Corp.,*
    958 F. Supp. 2d 390 (E.D.N.Y. 2013) ...................................................... 4

*Chen–Oster v. Goldman, Sachs & Co.,*
    877 F. Supp. 2d 113 (S.D.N.Y. 2012) ...................................................... 3

*Day Village Ltd. Partnership v. CW Capital L.L.C.,*
    No. 06-3424, 2006 WL 2572118 (S.D.N.Y. Sept. 7, 2006) ...................................................... 5

*Doctor's Assocs., Inc. v. Distajo,*
    66 F.3d 438 (2d Cir. 1995) ...................................................... 11

*Dreyfus v. eTelecare Global Solutions-US, Inc.,*
    No. 08-1115, 2008 WL 4974864 (S.D.N.Y. Nov. 19, 2008) ...................................................... 6, 8

*D'Antuono v. C&G of Groton, Inc.,*
    No. 11-33, 2011 WL 5878045 (D. Conn. Nov. 23, 2011) ...................................................... 9

*Emilio v. Sprint Spectrum, L.P.,*
   68 F. Supp. 3d 509 (S.D.N.Y. 2014) ..................................................................... 3, 14

*Fata v. Pizza Hut,*
   No. 14-00376 (M.D. Fla. Oct. 31, 2016) ..................................................................... 6

*Garcia v. Chipotle Mexican Grill, Inc.,*
   No. 16-601, 2016 WL 6561302 (S.D.N.Y. Nov. 4, 2016) ...................................... 8, 14

*Gitman v. Pearson Educ. Inc.,*
   No. 14-8626, 2015 WL 5122564 (S.D.N.Y. Aug. 31, 2015) .................................. 3, 10

*Growtech Partners v. Accenture LLP,*
   118 F. Supp. 3d 920 (S.D. Tex. 2015) ..................................................................... 12

*Guzman v. Three Amigos SJL Inc.,*
   117 F. Supp. 3d 516 (S.D.N.Y. 2015) ........................................................................ 8

*Harrington v. Atlantic Sounding Co., Inc.,*
   602 F.3d 113 (2d Cir. 2010) ...................................................................................... 5

*Hernandez v. Immortal Rise, Inc.,*
   No. 11-4360, 2012 WL 4369746 (E.D.N.Y. Sept. 24, 2012) ....................................... 9

*In Re Tyco Int'l Ltd. Sec. Litig.,*
   422 F.3d 41 (1st Cir. 2005) ..................................................................................... 12

*Kramer v. Hammon,*
   943 F.2d 176 (2d Cir. 1991) ..................................................................................... 11

*Lane, Ltd. v. Larus & Brother Co.,*
   243 F.2d 364 (2d Cir. 1957) ..................................................................................... 11

*Lewis v. Epic Systems, Corp.,*
   823 F.3d 1147 (7th Cir. 2016) .................................................................................... 9

*Lloyd v. J.P. Morgan Chase & Co.,*
   No. 11-9305, 2014 WL 2109903 (S.D.N.Y. Apr. 1, 2014) ......................................... 8

*May v. Nation Safe Drivers, Inc.,* No. 10-2577,
   No. 10-2577, 2010 U.S. Dist. LEXIS 58006 (D. Minn. Dec. 22, 2010) ................... 13

*Morris v. Ernst & Young, LLP,*
   834 F.3d 975 (9th Cir. 2016) ..................................................................................... 9

*Moton v. Maplebear Inc.*,
  No. 15-8879, 2016 WL 616343 (S.D.N.Y. Feb. 9, 2016) ........................................................ 5

*Nagy v. Arcas Brass & Iron Co.*,
  242 N.Y. 97 (1926) ............................................................................................................. 10

*Noodles Dev., LP v. Latham Noodles, LLC*,
  No. 09-1094, 2011 WL 204818 (D. Ariz. Jan. 20, 2011) ...................................................... 12

*Patterson v. Raymours Furniture Co., Inc.*,
  659 Fed. Appx. 40 (2d Cir. 2016) ......................................................................................... 9

*Racey v. Jay-Jay Cabaret, Inc.*,
  No. 15-8228, 2016 WL 3020933 (S.D.N.Y. May 23, 2016) ................................................... 8

*Raniere v. Citigroup Inc.*,
  533 F. App'x 11 (2d Cir. 2013) ............................................................................................ 13

*Raniere v. Citigroup Inc.*,
  827 F.Supp.2d 294 (S.D.N.Y.2011) ...................................................................................... 8

*Romero v. La Revise Assocs., L.L.C.*,
  968 F. Supp. 2d 639 (S.D.N.Y. 2013) ........................................................................... 7, 8, 14

*Russell v. Mimeo, Inc.*,
  No. 08-5354, 2008 WL 6559743 (S.D.N.Y. Oct. 29, 2008) ................................................... 4

*Starke v. Gilt Groupe, Inc.*,
  No. 13-5497, 2014 WL 1652225 (S.D.N.Y. Apr. 24, 2014) ................................................... 13

*Sutherland v. Ernst & Young LLP*,
  726 F.3d 290 (2d Cir. 2013) ............................................................................................. 9, 13

*Tae In Kim v. Dongbu Tour & Travel, Inc.*,
  529 F. App'x 229 (3d Cir. 2013) ........................................................................................... 5

*Williams v. Omainsky*,
  No. 15-123, 2016 WL 297718 (S.D. Ala. Jan. 21, 2016) ....................................................... 9

*Winfield v. Citibank, N.A.*,
  842 F. Supp. 2d 560 (S.D.N.Y. 2012) ............................................................................... 3, 14

*Woods v. Club Cabaret, Inc.*,
  No. 15-1213, 2015 WL 6444793 (C.D. Ill. Sept. 28, 2015) ................................................... 9

iv

*Zhang v. Wang,*
  317 F. App'x 26 (2d Cir. 2008) ........................................................................ 10, 11

**Statutes**

29 U.S.C. § 201 ................................................................................................................ 1

9 U.S.C. § 3 .................................................................................................................... 11

N.Y. Lab. Law, Art. 19 § 650 ........................................................................................ 1

**Regulations**

12 NYCRR § 142-2 .......................................................................................................... 1

<u>**PRELIMINARY STATEMENT**</u>

Defendant Equity Residential Properties Management Corp. ("Defendant" or "Equity") regularly violates the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), New York Labor Law, N.Y. Lab. Law, Art. 19 § 650 *et seq.* ("NYLL"), and Rules and Regulations of the State of New York ("NYCRR") § 142-2, by requiring employees, including Plaintiff Janice Nadeau ("Plaintiff"), to read and respond to text messages and phone calls before and after their scheduled work hours without compensating these employees for their work. After terminating Plaintiff for complaining of these violations and refusing to arbitrate her claims (*see* Declaration of Janice Nadeau, Dkt. No. 27, ("Nadeau Decl.") ¶ 17; June 10, 2016 Termination Letter from Equity to Nadeau, Exhibit 3 to Nadeau Decl., Dkt. No. 27-3), Defendant tried and failed to compel arbitration so as to block Plaintiff's attempt to have these employees' claims heard before this Court.  *See* Dkt. No. 36.  Now, Defendant again seeks to deny its employees access to this Court through a premature and strongly disfavored motion to strike Plaintiff's class and collective allegations, despite the lack of substantive evidence to support its argument.  For the reasons set forth below, Defendant's motion should be denied.

<u>**STATEMENT OF FACTS**</u>

Throughout the relevant period, Defendant knowingly permitted, encouraged, and required Plaintiff and other employees to work off-the-clock reading and responding to work-related texts messages and phone calls outside of their scheduled hours without properly tracking this work or paying its employees any wages for it, including overtime wages.  *See* Nadeau Decl. ¶¶ 6-10.

Plaintiff estimates that she worked, on average, at least two unpaid hours per week responding to text messages and emails before and after her scheduled work shift.  *Id.* ¶ 8. Defendant was able to avoid tracking this extra time by contacting Plaintiff and employees

outside of work hours with work-related inquiries and tasks.  *Id.* ¶ 9.  Defendant required

Plaintiff and other employees to promptly respond to these off-the-clock texts and emails before

their next scheduled work shift, however Plaintiff and Defendant's other employees were not

compensated for time spent reading and responding to Defendant's off-the-clock

correspondence.  *Id.* ¶¶ 9-10.

    After Plaintiff complained of these unlawful practices, Defendant terminated her

employment.  *Id.* ¶ 17.  When Plaintiff attempted to address these issues in arbitration before the

American Arbitration Association ("AAA"), Defendant refused to participate.  *Id.* ¶¶ 13-16, 18-

22; June 3, 2016 Correspondence between the AAA and Nadeau, Exhibit 2 to Nadeau Decl., Dkt.

No. 27-2, at 1; June 20-23, 2016 Email Correspondence Between Defendant and Nadeau, Exhibit

4 to Nadeau Decl., Dkt. No. 27-4, at 3; July 18 2016 Correspondence from the AAA to Parties,

Exhibit 5 to Nadeau Decl., Dkt. No. 27-5.

    Once Plaintiff brought this action, Defendant attempted to enforce the very arbitration

agreement it had already breached by refusing to participate in arbitration proceedings before the

AAA.  *See* Dkt. No. 36.  Plaintiff has repeatedly tried to have a Rule 26 conference with

Defendant, but, to date, Defendant has refused to participate in such a conference, which

prevents Plaintiff from propounding any discovery in this litigation.  *See* Declaration of Jeremiah

Frei-Pearson ("Frei-Pearson Decl.") at ¶¶ 4-7.  Nonetheless, Defendant now brings a strongly

disfavored motion to strike Plaintiff's class and collective action allegations based on alleged

arbitration agreements that it has not actually produced and that it admits were not signed by all

of its employees.  *See* Declaration of Lisa Leib, Dkt. No. 41 ("Leib Decl."), at ¶ 5 (admitting that

"employees covered by collective bargaining agreements" did not sign arbitration agreements).

# ARGUMENT

## I.     Legal Standard

### A.     Motions To Strike Class And
### Collective Action Claims Are Strongly Disfavored

It is well established in this Circuit that "[m]otions to strike are generally disfavored, and

should be granted only when there is a strong reason for doing so.  Moreover, a motion to strike

class allegations is even more disfavored because it requires a reviewing court to preemptively

terminate the class aspects of litigation, solely on the basis of what is alleged in the complaint,

and before plaintiffs are permitted to complete the discovery to which they would otherwise be

entitled on questions relevant to class certification."  *Winfield v. Citibank, N.A.*, 842 F. Supp. 2d

560, 573 (S.D.N.Y. 2012) (internal quotations and alterations omitted) (denying motion to strike

as premature); *see also Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 462 (S.D.N.Y. 2013) ("In

this Circuit, however, '[m]otions to strike are generally looked upon with disfavor.'  A motion to

strike class claims 'is even more disfavored.'") (quoting *Chen–Oster v. Goldman, Sachs & Co.*,

877 F. Supp. 2d 113, 117 (S.D.N.Y. 2012) (internal citations omitted); *Gitman v. Pearson Educ.

Inc.*, No. 14-8626, 2015 WL 5122564, at *3 (S.D.N.Y. Aug. 31, 2015) ("A motion to strike class

allegations under Rule 12(f) is even more disfavored because it requires a reviewing court to

preemptively terminate the class aspects of litigation, solely on the basis of what is alleged in the

complaint, and before plaintiffs are permitted to complete the discovery to which they would

otherwise be entitled on questions relevant to class certification.") (quoting *Belfiore v. Procter &

Gamble Co.*, No. 14-4090, 2015 WL 1402313, at *4 (E.D.N.Y. Mar. 20, 2015)); *Emilio v. Sprint

Spectrum, L.P.*, 68 F. Supp. 3d 509, 514 (S.D.N.Y. 2014) (same).  Defendant comes nowhere

near the high bar required to overcome this presumption against such motions to strike class

allegations.

B.     **The Summary Judgment Standard Applies To Questions Of Arbitrability**

Questions of arbitrability are decided under "a standard similar to that applicable for a motion for summary judgment." *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003). This standard is appropriate "regardless of how the party that favors arbitration styles its motion." *Carvant Financial LLC v. Autoguard Advantage Corp.*, 958 F. Supp. 2d 390, 394 (E.D.N.Y. 2013) (internal quotation omitted).

As the Tenth Circuit explained, "the party moving to compel arbitration bears the initial burden of presenting evidence sufficient to demonstrate the existence of an enforceable agreement; if it does so, the burden shifts to the nonmoving party to raise a genuine dispute of material fact." *Bellman v. i3Carbon, LLC*, 563 Fed. Appx. 608, 612 (10th Cir. 2014) (citations omitted); *see, e.g.*, *Russell v. Mimeo, Inc.*, No. 08-5354, 2008 WL 6559743, at *1 (S.D.N.Y. Oct. 29, 2008). "In ascertaining whether questions of material fact remain, we give the nonmoving party 'the benefit of all reasonable doubts and inferences that may arise.'" *Bellman*, 563 Fed. Appx. at 612 (citations omitted).

II.     **Defendant's Motion To Strike Fails To
        Overcome The Strong Presumption Against Such Motions**

A.     **There Are Genuine Disputes As To Material Facts
        Regarding Defendant's Arbitration Agreements And
        Defendant Has Provided No Evidence To Resolve Them**

Defendant asks this Court to deny all putative class and collective members the right to have their claims heard in litigation based on an indeterminate number of arbitration agreements that it has not even produced; instead it submits only a single declaration regarding Defendant's general policy of using such agreements, cherry-picking portions of two paragraphs (with ellipses and alterations) that it presents as universal across an unidentified number of

agreements.[1]  Relying on *Moton v. Maplebear Inc.*, No. 15-8879, 2016 WL 616343 (S.D.N.Y. Feb. 9, 2016) and *Harrington v. Atlantic Sounding Co., Inc.*, 602 F.3d 113 (2d Cir. 2010), Defendant would have the Court shift the burden to Plaintiff to show that the arbitration agreement is inapplicable or invalid.[2]

But legions of cases hold that Defendant cannot meet its burden to show the existence of arbitration agreements simply by submitting declarations stating that all employees agreed to arbitrate.  *See, e.g.*, *Barkley v. Pizza Hut of America, Inc.*, No. 14-376, 2014 WL 3908197 (M.D. Fl. Aug. 11, 2014) (denying motion to compel arbitration where employer submitted declarations stating that all employees agreed to arbitrate, but failed to produce declarations signed by all plaintiffs); *Tae In Kim v. Dongbu Tour & Travel, Inc.*, 529 F. App'x 229, 234 (3d Cir. 2013) *cert. denied,* 134 S. Ct. 826 (U.S. 2013) ("Dongbu's claim that Tae In Kim agreed to arbitrate any dispute that he might have with Dongbu is devoid of any possible merit, as the District Court plainly believed, because Dongbu wants us to require him to arbitrate his claims pursuant to an arbitration clause contained in a contract that it cannot show that he executed"); *Grant v. House of Blues New Orleans Restaurant Corp.*, No. 10-3161, 2011 WL1596207, at *5-7 (E.D. La. Apr.

---

[1] Defendant should not be allowed to belatedly submit the agreements or other purported proof that it should have submitted with its initial motion.  *See, e.g., Day Village Ltd. Partnership v. CW Capital L.L.C.*, No. 06-3424, 2006 WL 2572118, at *3 (S.D.N.Y. Sept. 7, 2006) ("Here, Defendant failed to include the requisite factual information in its moving papers. While Defendant has proffered such [evidence] in its reply papers, the Court will not consider this [evidence] as arguments cannot be made for the first time in reply papers.").

[2] *Moton* and *Harrington* are both inapposite.  In *Morton*, defendant "submitted admissible evidence establishing a prima facie case that it entered into a valid arbitration agreement with [plaintiff]" including "an audit trail showing the date and times when the documents were sent to [plaintiff], when he reviewed them, and when he signed them."  2016 WL 616343, at *5.  In *Harrington*, the court's holding that the burden had shifted to the plaintiff dealt specifically with plaintiff's affirmative claim that the agreement was unconscionable.  602 F.3d at 124.  Here, the issue of validity has not even been reached, because Defendant has not adequately presented the agreements in question to establish their existence.

27, 2011) (denying motion to compel arbitration where employer claimed to require all employees to agree to arbitrate, but could not provide a complete arbitration agreement signed by the plaintiff).

*Barkley* is instructive.  The *Barkley* defendants sought to compel arbitration without producing the actual arbitration agreements at issue, instead relying on declarations which "generally aver that it was [defendant's] policy for [employees] to sign the arbitration agreements and that they must have therefore done so."  *Barkley*, 2014 WL 3908197, at *3.  However, the *Barkley* court rightfully held that it was "thoroughly unconvinced that Defendants have even demonstrated the existence of an agreement" based on that record.  *Id*.  Plaintiffs then proceeded with a putative class case, which the court conditionally certified for settlement purposes.  *See Fata v. Pizza Hut*, No. 14-00376, Dkt. No. 228 (M.D. Fla. Oct. 31, 2016) (conditionally certifying a settlement class with subclasses based on the strengths of the employer's arbitration defense).

Plaintiff cannot reasonably be expected to show how "inapplicable or invalid" other arbitration agreements are when Defendant has not even produced any of those agreements and Defendant has refused to even participate in a Rule 26 conference, thus preventing Plaintiff from propounding the discovery necessary to dispute Defendant's claims.  *See* Frei-Pearson Decl. at ¶¶ 4-7.  Defendant's attempt to shift the burden to Plaintiff when discovery has not even begun is improper.  *See, e.g.*, *Dreyfus v. eTelecare Global Solutions-US, Inc*., No. 08-1115, 2008 WL 4974864, at *2 (S.D.N.Y. Nov. 19, 2008) (denying motion to compel arbitration and describing how court permitted discovery allowing plaintiff to refute defendant's inadequately supported claims regarding a "standard" arbitration agreement).  The Court should only "make the determination of whether to exclude those who signed arbitration agreement from the class at the

conclusion of discovery, when it may properly analyze the validity of the arbitration agreement."
*Romero v. La Revise Assocs., L.L.C.*, 968 F. Supp. 2d 639, 647 (S.D.N.Y. 2013) (quoting *Ali v. Sugarland Petroleum*, No. 09-170, 2009 WL 5173508, at *4 (S.D. Tex. Dec. 22, 2009); internal quotations and alteration omitted).

    Defendant offers nothing more than a blanket assertion that an indeterminate number of potential class members (that Defendant admits does not include those employees covered by collective bargaining agreements) signed arbitration agreements.  But this Court has been presented with only one instance of a signed arbitration agreement -- Plaintiff's own (Dkt. No. 18-2) -- and that is an agreement that Defendant itself breached and waived.  *See* Dkt. No. 36.[3] Without the benefit of discovery, Plaintiff cannot determine whether it is standard practice for Defendant to breach these arbitration agreements, as it did with Plaintiff's own.  Likewise, Plaintiff requires discovery to determine whether Defendant presented the arbitration agreement to all employees (*see Bensadoun*, 316 F.3d at 175 ("If there is an issue of fact as to the making of

---

[3] Defendant cites a declaration from Lisa Leib to assert that "Plaintiff is the only employee that Equity Residential has ever denied arbitration" (Defendant's Motion at 6 (citing Leib Decl. ¶ 8)), that arbitrations have been conducted under a vaguely defined "arbitration program" (*id.* (citing Leib Decl. ¶ 9)), and that some of Equity's arbitration agreement have, on certain occasions, been challenged but deemed enforceable in court -- although, tellingly, she does not actually testify that there have never been other occasions where it was ruled unenforceable.  *Id.* (citing Leib Decl. ¶ 9).  Assuming this argument is relevant, it is factually unpersuasive.  Defendant presents only Ms. Leib's testimony, stating that no other "non-exempt employees" have been denied the right to arbitrate (Leib Decl. ¶ 8) (which, of course, identifies only one of the myriad grounds on which an agreement might be found unenforceable) and a select number of California state court decisions (Exhibit A to Leib Decl., Dkt. No. 41-1), but even here it has not produced the agreements that were at issue in those cases.  Thus neither Plaintiff nor the Court can properly evaluate whether those decisions were actually based on the same or substantively similar agreements, or whether the arbitration agreements used in the "arbitration program" have materially varied over time.  Respectfully, Plaintiff declines to simply take Defendant at its word on this wide-ranging factual issue, and reserves the right to conduct discovery, including potentially deposing Ms. Leib, to explore the issue.  However, because Defendant has not produced any of the arbitration agreements beyond one that it did conclusively breach and refuses to participate in a Rule 26 conference, Plaintiff is left unable to properly undertake such discovery at this time.

the agreement for arbitration, then a trial is necessary.")), whether any employees in fact chose

not to sign the arbitration agreements (*see id.*), what the complete essential terms are in such

agreements (*see Dreyfuss*, 2008 WL 4974864, at *10 (denying motion to compel arbitration

where defendant did not provide a full copy of the arbitration agreement, rendering the

agreement indefinite and unenforceable)), or whether the circumstances under which the

agreements were signed render them procedurally unconscionable.  *See Brennan v. Bally Total*

*Fitness*, 198 F. Supp. 2d 377, 383 (S.D.N.Y. 2002) (holding that arbitration agreement was

unenforceable due to being procedurally unconscionable where employee lacked a "meaningful

choice" in signing).  Defendant has also made no showing that potential class members other

than Plaintiff received the same employee handbook, nor that the handbook itself represents an

enforceable contract.

When named plaintiffs are not personally bound by arbitration agreements, courts in this

District and throughout the country have routinely allowed class and collective claims to proceed

to certification, even when other members of the putative class or collective may have signed

arbitration agreements.  *See, e.g., Garcia v. Chipotle Mexican Grill, Inc.*, No. 16-601, 2016 WL

6561302, at *9 (S.D.N.Y. Nov. 4, 2016) (granting conditional certification of FLSA collective

action over defendant's argument that putative collective members were bound by arbitration

agreements).[4]  The same outcome is appropriate here.  The enforceability of arbitration

---

[4] *See, e.g.*, *Racey v. Jay-Jay Cabaret, Inc.*, No. 15-8228, 2016 WL 3020933, at *5 (S.D.N.Y.
May 23, 2016) (same); *Guzman v. Three Amigos SJL Inc*., 117 F. Supp. 3d 516, 526 (S.D.N.Y.
2015) (same); *Lloyd v. J.P. Morgan Chase & Co.*, No. 11-9305, 2014 WL 2109903, at *7
(S.D.N.Y. Apr. 1, 2014) (same); *Romero v. La Revise Assocs., L.L.C.*, 968 F. Supp. 2d 639, 647
(S.D.N.Y. 2013) (Defendants have failed to cite a single authority finding that due to the
possibility that members of the collective [action] might be compelled to bring their claims in an
arbitral forum, certification is not appropriate. Such arguments are best suited to the second
certification stage, where, on a fuller record, the court will examine whether the plaintiffs and
opt-ins are in fact similarly situated.) (quoting *Raniere v. Citigroup Inc.,* 827 F.Supp.2d 294

agreements is a merits issue, and it should be decided only with the benefit of a complete factual

record after discovery is concluded, not before it has even begun and when Defendant has yet to

even produce the alleged agreements in question. [5]

---

(S.D.N.Y.2011), *rev'd on other grounds,* 533 Fed.Appx. 11, 2013 WL 4046278 (2d Cir.2013));
*Hernandez v. Immortal Rise, Inc*., No. 11-4360, 2012 WL 4369746, at *5 (E.D.N.Y. Sept. 24,
2012) ("[T]he existence of arbitration agreements is irrelevant to class certification, because it
raises a merits-based determination.") (quoting *D'Antuono v. C&G of Groton, Inc*., No. 11-33,
2011 WL 5878045, at *4 (D. Conn. Nov. 23, 2011) (internal quotations omitted)); *Campbell v.
Pincher's Beach Bar Grill Inc.*, No. 15-695, 2016 WL 3626219, at *4 (M.D. Fl. July 7, 2016)
(holding that "issues regarding arbitration agreements executed by employees are more properly
examined at the second tier of the certification process because they involve merit-based
determinations"); *Williams v. Omainsky*, No. 15-123, 2016 WL 297718, at *7 (S.D. Ala. Jan. 21,
2016) ("[D]istrict courts have routinely (i) declined to address arbitration issues in adjudicating
motions for FLSA conditional certification, and (ii) determined that the execution of arbitration
agreements by certain prospective opt-in plaintiffs does not deprive them of 'similarly situated'
status vis a vis named plaintiffs who did not sign such agreements."); *Woods v. Club Cabaret,
Inc.*, No. 15-1213, 2015 WL 6444793, at *5 (C.D. Ill. Sept. 28, 2015) (holding that "any issues
related to opt-in plaintiffs with arbitration agreements can be addressed at step-two of the class
certification process," not at conditional certification stage); *Ali*, 2009 WL 5173508, at *4
("[T]he Court refuses to consider this merits-based argument [regarding arbitration agreements]
until discovery is complete.").

[5] Even assuming *arguendo* that Defendant's motion otherwise had merit, which it does not,
Defendant's motion is especially premature because the Supreme Court has granted certiorari to
determine whether class waivers in arbitration agreements are enforceable.  *See Lewis v. Epic
Systems, Corp*., 823 F.3d 1147 (7th Cir. 2016), *cert granted*, 85 U.S.L.W. 3343 (U.S. Jan. 13,
2017) (No. 16-285).  If the Supreme Court joins the Sixth, Seventh and Ninth Circuits in holding
that such agreements are unenforceable, then Defendant's arbitration defense would fail even if
Defendant was able to prove that all class members had signed an otherwise enforceable
arbitration agreement.  *See N.L.R.B. v. Alternative Entertainment, Inc.*, No. 16-1385, Dkt. No. 47
(6th Cir. May 26, 2017) (holding that class waivers in arbitration agreements violate the National
Labor Relations Act and are unenforceable); *Lewis*, 823 F.3d 1147 (same); *Morris v. Ernst &
Young, LLP*, 834 F.3d 975 (9th Cir. 2016), *cert. granted*, 85 U.S.L.W. 3344 (U.S. Jan. 13, 2017)
(No. 16-300) (same); *but see Patterson v. Raymours Furniture Co., Inc.*, 659 Fed. Appx. 40, 43
(2d Cir. 2016), *petition for cert. filed* (U.S. Jan. 7, 2017) (No. 16-388) ("If we were writing on a
clean slate, we might well be persuaded, for the reasons forcefully stated in Chief Judge Wood's
and Chief Judge Thomas's opinions in *Lewis* and *Morris*, to join the Seventh and Ninth Circuits
and hold that the EAP's waiver of collective action is unenforceable.  But we are bound by our
Court's decision in *Sutherland v. Ernst & Young LLP*, 726 F.3d 290 (2d Cir. 2013), which aligns
our Circuit on the other side of the split.").  As such, even if Defendant's arguments were not
unpersuasive, its motion should still be denied pending the outcome of *Lewis*.

### B.    Defendant Admits That Some Putative Class Members Are Not Subject To The Arbitration Agreements

Defendant admits that its employees covered by collective bargaining agreements did <u>not</u> sign the arbitration agreement (*see* Leib Decl. ¶ 5) and has made no showing that anything in collective bargaining agreements would preclude them from joining this action.  Because these employees are potential class and collective members, Defendant's own argument establishes that arbitration agreements are not universal and, as such, certification based on Plaintiff's allegations is not "impossible."  *See Gitman*, 2015 WL 5122564, at *3 (denying motion to strike where, "at this stage, there is nothing in Plaintiffs' Complaint to suggest that a class could *never* be certified" even if "a narrower class" may ultimately be appropriate after discovery).  As there exists, at bare minimum, a potential class and collective under Plaintiff's definitions that consists of those employees covered by collective bargaining agreements, there is no reason to strike Plaintiff's class and collective claims.  *Id.*

### C.    Defendant Breached And Waived Its Arbitration Agreement

Even assuming *arguendo* that there were no factual disputes and that Defendant provided sufficient proof that every class member signed an enforceable arbitration agreement, Defendant still could not enforce those arbitration agreements because it has breached the agreement and thereby waived its right to enforce it.

"Like contract rights generally, a right to arbitration may be modified, waived or abandoned.  A refusal by a party to arbitrate upon demand duly made by the other side constitutes such a waiver."  *Zhang v. Wang*, 317 F. App'x 26, 28 (2d Cir. 2008) (internal citations, quotations, and alterations omitted); *see also Nagy v. Arcas Brass & Iron Co.*, 242 N.Y. 97, 98 (1926) (per curiam) (affirming denial of a motion by defendant to direct arbitration pursuant to an arbitration agreement because the trial could have found "that the defendant had

refused to arbitrate before the action was begun or else that because of the great delay on its part it intended to waive what would otherwise have been its right").  When determining arbitrability, the Federal Arbitration Act requires a court to determine whether an arbitration agreement has been waived and is thereby unenforceable.  *See Doctor's Assocs., Inc. v. Distajo*, 66 F.3d 438, 456 (2d Cir. 1995) (describing the waiver defense as a "statutorily mandated inquiry in [9 U.S.C.] § 3 cases").  "[C]rucial to the establishment of waiver in the arbitration context is the presence of conduct by the party seeking to compel arbitration which reflects a positive and unequivocal election to ignore his or her arbitration rights."  *Zhang*, 317 F. App'x at 28 (internal citation and quotations omitted).  Defendant's waiver of the arbitration agreement forecloses it from requiring putative class and collective members to arbitrate under the terms of that agreement.  *Cf. Kramer v. Hammon*, 943 F.2d 176, 178 (2d Cir. 1991) (holding that waiver of right to invoke arbitration clause in a prior action applied in subsequent action involving the same legal and factual issues).

     As this Court has already found, even though Ms. Nadeau's arbitration demand "triggered defendant's obligation to arbitrate" (Dkt. No. 36 at 7), Defendant nonetheless "refused to participate in the arbitration process at all."  *Id.* at 8 (quoting *Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1010 (9th Cir. 2005)).  While Court did not previously reach the issue of waiver when ruling against Defendant's motion to compel (Dkt. No. 36 at 6, n.1), courts routinely hold that such refusal to participate in arbitration constitutes waiver of the right to demand arbitration. *See, e.g., Lane, Ltd. v. Larus & Brother Co.*, 243 F.2d 364, 367 (2d Cir. 1957) (holding that the defendant's unjustified refusal to arbitrate liability and damages was sufficient to constitute such a repudiation of the obligation to arbitrate as to amount to a waiver of the correlative right to arbitrate) ("[B]y refusing to arbitrate the precise questions involved in this suit, [the defendant]

had forfeited its own right to arbitrate.  A party cannot raise unjustifiable objections to a valid demand for arbitration, all the while protesting its willingness in principle to arbitrate and then, when the other side has been forced to abandon its demand, seek to defeat a judicial determination by asking for arbitration after suit has been commenced."); *In Re Tyco Int'l Ltd. Sec. Litig.*, 422 F.3d 41 (1st Cir. 2005) (affirming denial of motion to compel based on finding that moving party had unequivocally waived his right to arbitrate dispute by indicating that he did not consent to the AAA administration of the matter or agree to participate in the arbitration filed with the AAA and failing to take further action until the AAA dismissed the arbitration); *Brown*, 430 F.3d at 1012-13 (holding that employer's refusal to pay fees demanded by arbitral authority or participate in arbitration duly-initiated by employee "easily satisf[ied]" any obligation by the employee to demonstrate that the defendant employer was aware of its right to arbitrate and had acted inconsistently with that right); *Growtech Partners v. Accenture LLP*, 118 F. Supp. 3d 920, 946 (S.D. Tex. 2015) (finding defendant waived its right to demand arbitration because a party cannot refuse to participate in arbitration and then move to compel when the other party files suit); *Noodles Dev., LP v. Latham Noodles, LLC*, No. 09-1094, 2011 WL 204818, at *2 (D. Ariz. Jan. 20, 2011) (same).

Having previously "refused to participate in the arbitration process at all" (Dkt. No. 36 at 8), Defendant has waived its right to demand arbitration in this matter.  *See Tyco*, 422 F.3d at 46 ("[A party] should not be allowed to reject [another party's] demand for arbitration, stand idle, then submit a motion to compel arbitration after [the other party] has been required to commence a court proceeding.").  Accordingly, the Court should deny Defendant's motion to strike Plaintiff's class and collective action allegation based on this waived arbitration agreement.  *See id.* at 46-47 ("Judicial condonation of such deliberate gamesmanship directly conflicts with the

oft-cited principle that arbitration is not meant to be another weapon in the arsenal for imposing

delay and costs in the dispute resolution process.") (citation and quotation omitted).

### D. Defendant's Cited Cases Are Uniformly Inapposite

In arguing that class waivers are routinely enforced, Defendant cites to a string of

inapposite cases in which the named plaintiffs' own standing to bring their actions were at issue.

None of these cases stands for the proposition that it is appropriate for a court to dismiss the class

or collective action claims of a plaintiff who is not personally subject to a contract that waives

her right to bring such claims.

In both *Sutherland v. Ernst & Young LLP*, 726 F.3d 290 (2d. Cir. 2013) *and Raniere v.*

*Citigroup Inc.*, 533 F. App'x 11 (2d Cir. 2013), the Second Circuit reversed denials of motions to

compel arbitration when the plaintiffs had tried to invalidate arbitration agreements that they

were personally bound by under a specific theory that the class action waiver had removed their

financial incentive to pursue their FLSA claims.  The court never considered nor discussed

striking class or collective allegations from the complaint of a plaintiff who was not personally

bound by an arbitration agreement solely on the assertion that other putative class or collective

members might be subject to such an agreement.  Likewise, in *Starke v. Gilt Groupe, Inc.*, No.

13-5497, 2014 WL 1652225 (S.D.N.Y. Apr. 24, 2014), the court only determined that the named

plaintiff himself was required to bring his own individual claims in arbitration (based on

accepting a website's terms of use rather than in an employment context) and thus dismissed his

case.  Again, the court never considered any arbitration agreements other than the named

plaintiff's own, let alone agreements that had never been produced.  Finally, in *May v. Nation*

*Safe Drivers, Inc.*, No. 10-2577, 2010 U.S. Dist. LEXIS 58006 (D. Minn. Dec. 22, 2010) -- the

only case actually involving a motion to strike -- the District of Minnesota court again struck the

class and collective action claims based on a waiver that applied specifically to the named plaintiffs bringing the action.

All of these cases turned on whether the named plaintiffs themselves were obligated to bring their respective claims in arbitration or were prohibited from bringing class or collective action claims, not on putative class members' separate agreements. *See Emilio*, 68 F. Supp. 3d 519 (denying motion to strike where defendant argued that "other members of the putative class are all bound to binding arbitration clauses, which preclude their joinder in class claims") (internal quotations and citation omitted). When arbitration agreements do not bind the named plaintiffs, however, courts in this District have consistently ruled that class and collective action allegations can proceed, including conditionally certifying collectives where putative members might be subject to arbitration agreements. *See, e.g., Garcia*, 2016 WL 6561302. The same is appropriate here. The validity of Plaintiff's own arbitration agreement has been decided, and Defendant lost the right to enforce that agreement through its own willful actions. *See* Dkt. No. 36. The validity of absent potential class members' agreements (should such agreements exist) should be determined only after discovery, when a full record will allow the Court or a jury to reach a decision on the merits. *See Romero*, 968 F. Supp. 2d at 647; *Winfield*, 842 F. Supp. 2d, at 573-74 ("In this case, as well, the defendant's motion strike plaintiff['s] class allegations is premature and should await a decision on class certification where the Court will have the benefit of a full factual record.").

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's motion to strike class and collective action allegations.

Dated:  June 9, 2017
        White Plains, New York

Respectfully submitted,

**FINKELSTEIN, BLANKINSHIP,
FREI-PEARSON & GARBER, LLP**

By:  _/s/ Jeremiah Frei-Pearson_
Jeremiah Frei-Pearson
D. Greg Blankinship
John D. Sardesai-Grant
445 Hamilton Avenue, Suite 605
White Plains, New York 10601
Tel: (914) 298-3281
Fax: (914) 824-1561
jfrei-pearson@fbfglaw.com

*Attorneys for Plaintiff and the Putative Class*