UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------X

JANICE NADEAU, individually and on
behalf of all others similarly situated,

                Plaintiff,

       v.

EQUITY RESIDENTIAL PROPERTIES
MANAGEMENT CORPORATION,

           Defendant.

INDEX NO.: 7:16-CV-07986-VLB-LMS

-----------------------------------------------------X

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S MOTION TO STRIKE CLASS AND COLLECTIVE ACTION ALLEGATIONS

Of Counsel:

Amy J. Traub
Baker & Hostetler LLP
45 Rockefeller Plaza, 14th Floor
New York, NY  10111
Telephone:   212.589.4200
Facsimile:   212.589.4201

John C. McIlwee(*pro hac vice*)
191 N. Wacker Dr., Ste. 3100
Chicago, IL  60606
Telephone:   312.416.6200
Facsimile:   312.416.6201

*Attorneys for Defendant*

## **PRELIMINARY STATEMENT**

All putative members of the class and collective—with the exception of union employees with whom Plaintiff alleges no similarity—have agreed to resolve their wage disputes through individual arbitration and have expressly waived their rights to participate in a class or collective action.  Thus, class and collective action allegations are futile in this case.  Therefore, it is Plaintiff's burden to produce evidence that the companywide arbitration agreement does not bind members of the putative class.  Plaintiff has failed to meet her burden, and the challenged allegations must be stricken.

Plaintiff's opposition to Defendant's motion argues that the facts pertaining to the standard agreements are so varied for each employee that discovery and resolution of individual fact issues are needed on a case-by-case basis.  Plaintiff, however, fails to demonstrate one set of facts pertaining to any prospective member of the class that shows Defendant's arbitration agreement to be inapplicable or invalid.  Thus, the binding effect of Defendant's arbitration program is unrebutted, and the class character of this case is therefore doomed.

In the alternative, Plaintiff argues that the Court's ruling on Defendant's motion to compel—which ruling was based solely on what the Court viewed to be a breach by Defendant in Plaintiff's unique circumstances—somehow bars Defendant from enforcing its arbitration agreement against any other company employee for all time.  This argument overstates the legal impact of the Court's ruling on the motion to compel, and must be rejected.  No other employee is in Plaintiff's legal slippers.

1

Plaintiff finally argues that the presence of union employees without signed arbitration agreements is a loophole that survives Defendant's motion to strike.  This argument is groundless.  Plaintiff is neither covered by a collective bargaining agreement nor a union member.  Plaintiff is not similarly situated to any union employees.  Whether they agreed to arbitrate or not, union members will never be subsumed within the class allegations of Plaintiff's complaint.

For all of the reasons set forth in its moving papers and below, Defendant's motion to strike should be granted.

<u>**ARGUMENT**</u>

**I.      Individualized Issues of Fact Do Not Prevent the Court from Granting Defendant's Motion to Strike.**

Plaintiff argues that the enforceability of Defendant's arbitration agreement against each prospective class member depends on the individualized circumstances under which each employee entered into the agreement.  (*See* Pl.'s Mem. pp. 4-9.)  This is a peculiar argument when Plaintiff herself does not challenge the binding nature of the agreement and, in fact, specifically sought to enforce it.  Yet, Plaintiff believes that fact discovery is needed in order to resolve issues pertaining to "whether the circumstances under which the agreements were signed render them procedurally unconscionable."[1] (Pl.'s Mem. p. 8.)  These purported fact issues, whether they exist anywhere outside of Plaintiff's hypothetical or not, do not prevent the Court from granting Defendant's

---

[1] As a brief aside, this is the first time that Plaintiff has raised the issue of unconscionability. The argument rings hollow for at least two obvious reasons. First, Plaintiff demanded arbitration under the agreement prior to Equity seeking the enforcement thereof, thus conceding that it passed muster in substance and procedure. Second, Plaintiff had the opportunity to argue unconscionability in opposing Defendant's motion to compel arbitration and she chose not to. The unconscionability argument is, therefore, waived.

motion to strike.  On the contrary, the proponent of arbitration need only establish that an agreement to arbitrate exists.  *See, e.g., Moton v. Maplebear, Inc.*, No. 15-cv-8879-CM, 2016 WL 616343, at *4 (S.D.N.Y. Feb. 16, 2016).  It does not need to show that its agreement is enforceable.  *See id.*

It has already been established, in the Complaint itself, that Defendant's agreement to arbitrate exists, at the very least, in its company handbook.  (Compl. ¶ 20.) And Defendant has confirmed this allegation by presenting the Court with that company handbook.  (*See* Document No. 18, Declaration of Mary Pawlisa, Exhibit 3.)  Courts in this district routinely recognize arbitration agreements contained in employee handbooks, such as Defendant's, as binding agreements.  *See Patterson v. Raymours Furniture Co., Inc.*, 96 F. Supp. 3d 71, 76 (S.D.N.Y. 2015) (compelling arbitration based on agreement in employee handbook); *Chanchani v. Salomon/Smith Barney, Inc.*, No. 99-cv-9219-RCC, 2001 WL 204214, at *3, (S.D.N.Y. Mar 1, 2001) (same); *see also Litvinov v. UnitedHealth Grp. Inc.*, No. 13-cv-8541-KBF, 2014 WL 1054394, at *3 (S.D.N.Y. Mar. 10, 2014) (same); *Beletsis v. Credit Suisse First Boston, Corp.*, No 01-cv-6266-RCC, 2002 WL 2031610, At *3 (S.D.N.Y. Sep. 4, 2002) (same). Thus, Defendant's arbitration agreement exists companywide.

To the extent Plaintiff argues potential fact issues stemming from whether an agreement to arbitrate was signed or not signed in each case, such an issue has no impact on arbitration with employees who continued to work for Equity after receiving the arbitration agreement; arbitration is still mandatory.  *See Patterson*, 96 F. Supp. 3d at 76 ("[T]he FAA does not require a signed writing, but only a writing, and under New York law, the conduct of the parties may lead to the inference of a binding agreement.")

(internal marks and citations omitted); *see also Brown v. St. Paul Travelers Co.*, 331 F. App'x 68, 70 (2d Cir. 2009) ("continued employment after" repeated notification regarding the employer's arbitration policy "lends force to the presumption that she agreement to be bound to the arbitration policy."); *Manigault v. Macy's E., LLC*, 318 F. App'x 6, 8 (2d Cir. 2009) (same).   In this case, participation in the class hinges on continued employment past the date of receiving the arbitration agreement (day 1), so flooding the Court's docket with thousands of pages of signed acknowledgements is a needlessly formalistic chore.  Plaintiff's request for such paper should be disregarded.

On this point, Plaintiff's emphasis on the *Barkley* case is misplaced.  *Barkley* is a Florida case that actually followed an employer's successful motion to compel arbitration and an arbitrator's decision to enforce class waivers.  *Barkley v. Pizza Hut of Am., Inc.*, No. 6:14-cv-376, 2014 WL 3908197, at *1-2 (M.D. Fla. Aug. 11, 2014).   These prior decisions resulted in scores of individual arbitrations by the original would-be putative class members.  *Id.*  This is the precise result that is appropriate in this case.  Unlike this case, however, in *Barkley* three of the original prospective class members actually submitted proof that they never agreed to the company's arbitration program.  *Id.* at *2.  The employer had lost their agreements.  *Id.*  Thus, to combat this evidence, the employer attempted to have a representative of the company submit an affidavit saying that these prospective class members must have signed an agreement and invited the court to infer that they did.  *Id.*  The *Barkley* court would not.  Defendant is not asking for such an inference in this case. Here, under New York law, Defendant is asking the Court to take heed of Plaintiff's allegation of the companywide arbitration agreement and to follow

4

New York law, supporting that an employee's receipt of an arbitration agreement in a company handbook and subsequent continued employment is enough to demonstrate that a binding agreement exists. These facts were not present in *Barkley*.

When it is established that an arbitration agreement exists, as is the case here, the burden of showing the agreement to be inapplicable or invalid shifts to the party seeking to avoid arbitration.  *See Moton*, 2016 WL 616343, at 4.  "[L]imited discovery into the validity of the arbitration agreement" is only allowed upon a showing of "reliable evidence that is more than a naked assertion . . . that it did not intend to be bound by the arbitration agreement" *Id.* (internal marks omitted).  Mere speculation, of the type in which Plaintiff engages (*see* Pl.'s Mem. p. 7), is insufficient to allow discovery.  *Id.* at *5.

Plaintiff does not present any evidence, much less reliable evidence, of a prospective class member intending not to be bound by the arbitration agreement.  (*See* Pl.'s Mem. *passim*.)  On the contrary, she simply speculates about the various ways an agreement to arbitrate could be undone.  All the while, the Court knows that Plaintiff herself intended to be bound by the agreement, because she demanded arbitration under the terms of that agreement.  *See Nadeau v. Equity Residential Props. Mgmt. Corp.*, No. 7:16-cv-7986-VLB, 2017 WL 1842686, at *2 (S.D.N.Y. May 5, 2017).  The Court also knows that Equity intended to be bound by the agreement in the *Alvarado, Aragon, Harter,* and *Shin* cases included in the supporting Declaration of Lisa Leib. (*See* Document No. 41, Declaration of Lisa Leib ("Leib Decl."), ¶ 10.)  On this record, Plaintiff has not met her burden of showing that prospective class members will be able to avoid arbitration.

Lastly, Plaintiff's attempt to draw support from *Garcia* in order to maintain her class and collective action allegations is off-the-mark.   In *Garcia*, no arbitration agreement had been presented to the court at the time it ruled on conditional certification.  *Garcia v. Chipotle Mexican Grill, Inc.*, 16-cv-601-ER, 2016 WL 6561302, at *9 (S.D.N.Y. Nov. 4, 2016).   Rather, defendant merely asked that the court limit notice to employees hired before August 2014, when the company introduced its arbitration agreement.  *See id.*   Here, by contrast, the arbitration agreement was alleged in Plaintiff's complaint to bind her, and it was presented to the Court during the motion to compel.   Those facts remove this case entirely from the facts presented in *Garcia* and the string-cited cases analogous to it.   (*See* Pl.'s Mem. p. 8 n. 4.)   There is no asserted opt-in who may consent to join this action who will not be compelled to arbitration.   Plaintiff offers no opt-in who would oppose that result, either.   *Garcia* is easily distinguishable.[2]

## II.   This Court's Ruling On Defendant's Motion to Compel Does Not Bar Equity from Enforcing Arbitration in All Other Cases.

Later in her brief, Plaintiff completely ignores the individualized facts that she urges in point one, and argues that Plaintiff's truly unique experience in arbitration is a stand-in for all current and former employees regardless of their circumstances.  (*See* Pl.'s Mem. pp. 10-13.)   Specifically, Plaintiff argues that because this Court found that

---

[2] In addition, the asserted presence of as many fact issues as there are potential plaintiffs does not undermine the motion to strike; it presents further evidence that class treatment is inappropriate. Indeed, the Second Circuit recently blocked class certification because individualized fact issues amongst prospective class members predominated. *See Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 147 (2d Cir. 2015). If Plaintiff's point is that the Court must now demand the same motion to compel briefing as it did with Plaintiff for every member of the potential class, simply to decide who is in the class or collective and who is not, then Plaintiff herself demonstrates why her action cannot be a class action.  *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 131 S. Ct. 2541, 2551 (2011) ("What matters to class certification . . . [is] the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.").

Defendant breached its arbitration agreement in her case, it is precluded from enforcing its arbitration agreement *against any other employee for all time*. No law supports such a use of offensive collateral estoppel.[3]  Rather, in the Second Circuit:

> In order for a plaintiff to bar a defendant from litigating an issue on collateral estoppel grounds: (1) the issues in both proceedings must be identical, (2) the issues in the prior proceeding must have been actually litigated and actually decided, (3) there must have been a full and fair opportunity for litigation in the prior proceeding, and (4) the issue previously litigated must have been necessary to support a valid and final judgment on the merits.

*Faulkner v. Nat'l Geographic Enters. Inc.*, 409 F.3d 26, 37 (2d Cir. 2005). Plaintiff's argument fails in each category.

*First*, there is not another set of facts identical to those supporting the finding of a breach in Plaintiff's case.  (*See* Leib Decl. ¶ 8.)  But even if there were, the Court is now informed of other employment arbitrations where the facts underlying Defendant's performance of the arbitration agreement were very different from Plaintiff's case.  (*See* Leib Decl. ¶ 10.)  Thus, the particular breach and waiver that Plaintiff now seeks to apply on behalf of unrepresented and non-present employees is so unique to her facts that it cannot be said—and Plaintiff has failed to prove—that identical issues will arise in every future motion to compel arbitration.  *Second*, the waiver issue that Plaintiff now argues, again on behalf of unrepresented and non-present employees, was never actually decided by this Court.  *See Nadeau*, 2017 WL 1842686, at *3 n. 1.  *Third*, Defendant has not had a full and fair opportunity to defend against any potential assertion that it breached its

---

[3] Moreover, acceptance of this argument would lead to an absurd result.  If a nationwide fast-food business breached its franchise agreement with a particular franchisee, the legal implication of the breach would not impact its franchise agreement with every franchisee in the country, regardless of the particular circumstances of each case. Yet, that is the way that Plaintiff seeks to use collateral estoppel in this case.

arbitration agreement or waived its right to arbitrate in any other case.  Importantly, Plaintiff does not identify any employee with such a claim of breach or waiver, and Equity is not aware of one either.  *Fourth*, this Court's decision denying Defendant's motion to compel arbitration with Plaintiff was neither essential to a decision on the merits of Plaintiff's wage and hour claims nor relevant to an ultimate judgment in this case.  Thus, it has no preclusive effect.  Plaintiff's use of offensive collateral estoppel must be rejected.

### III.   Employees Governed By Collective Bargaining Agreements Are Not Alleged To Be Similarly Situated to Plaintiff.

Plaintiff also argues that the presence of union laborers—without an arbitration agreement like the one that binds Plaintiff and prospective members—bars any relief under Defendant's motion to strike.  This is beside the point.  If Plaintiff wanted to represent the interests of union workers, it was her job to allege in her Complaint a factual nexus between her situation and their situation.  *See Guillen v. Marshalls of MA, Inc.*, 841 F. Supp. 2d 797, 801 (S.D.N.Y. 2012), *adopted*, No. 09-cv-9575-LAP-GWG, 2012 WL 2588771 (S.D.N.Y. July 2, 2012).  No such allegations have been made, nor could they be.  Indeed, Plaintiff alleges that her supervisor set forth the terms and conditions of her employment that led to violations of federal and state wage laws.  (*See* Compl. ¶18.)  She does not allege anywhere, nor could she, that the terms and conditions of her employment, or those of any other employee, such as permitted work communications, hours of work, or overtime compensation, were negotiated by a bargaining representative and memorialized under a collective bargaining agreement.  (*See* Compl. *passim*.)  She also makes no mention, nor could she, of any employee in her job position as being a member of any union.  Thus, it is not a fair or reasonable inference to say that she, as a

former Customer Care Assistant, is similarly situated to union maintenance workers at properties where she has never worked a single shift.

As several courts have noted, "[i]t would be a waste of the Court's and the litigants' time and resources to notify a large and diverse class only to later determine that the matter should not proceed as a collective action because the class members are not similarly situated." *Guillen*, 841 F. Supp. 2d at 803 (collecting cases). Just because Equity concedes that some non-exempt union employees were subject to different arbitration provisions from hers does not automatically mean such employees are similarly situated to Plaintiff—simply by virtue of the fact that she alleges she is non-exempt. *See id.* Accordingly, Plaintiff's union argument should be rejected.[4]

## <u>CONCLUSION</u>

The record here undeniably shows that an arbitration agreement exists companywide and that it, coupled with enforceable class waivers, binds prospective class members. Plaintiff has not offered any contrary facts. Accordingly, the class and collective action allegations in the complaint cannot ignore the truth and pretend that there are no binding agreements to arbitrate. Plaintiff is *only* similarly situated to prospective members if they too attempted arbitration on wage claims and were denied those proceedings. There are none. To pretend otherwise will lead to a multiplication of proceedings on motions to compel arbitration, which will inevitably waste judicial resources and the time and money of all parties.

---

[4] To the extent that Plaintiff now attempts to align with *Lewis v. Epic Systems Corp.*, 823 F.3d 1147 (7th Cir. 2016) and its progeny, Plaintiff has waived the opportunity to do so by not raising it in the first instance, in her opposition to the motion to compel arbitration.

Dated: New York, New York                    Respectfully submitted,
       June 16, 2017

                                             BAKER & HOSTETLER LLP


                                             By:    /s/ Amy J. Traub
                                                    Amy J. Traub
                                                    atraub@bakerlaw.com
                                                    45 Rockefeller Plaza, 14th Floor
                                                    New York, NY  10111
                                                    Telephone:  212.589.4200
                                                    Facsimile:   212.589.4201

                                                    John C. McIlwee (*pro hac vice*)
                                                    jmcilwee@bakerlaw.com
                                                    191 N. Wacker Dr., Ste. 3100
                                                    Chicago, IL  60606
                                                    Telephone:    312.416.6200
                                                    Facsimile:      312.416.6201

                                             *Attorneys for Defendant*

10