170728nadeauD                    Decision

 1  UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
 2  ------------------------------x

 3  JANICE NADEAU, et al.,

 4            Plaintiffs,

 5       v.                            16 Civ. 7986(VB)

 6  EQUITY RESIDENTIAL PROPERTIES
    MGMT. CORP.,
 7
              Defendant.
 8
    ------------------------------x          White Plains Courthouse
 9                                           White Plains, N.Y.
                                             July 28, 2017
10                                           10:43 a.m.

11  Before:

12            THE HONORABLE VINCENT L. BRICCETTI,

13                                             District Judge

14                      APPEARANCES

15  FINKELSTEIN BLANKINSHIP FREI-PEARSON & GARBER, LLP
         Attorney for Plaintiff Janice Nadeau
16  JEREMIAH LEE FREI-PEARSON

17  BAKER & HOSTETLER, LLP
         Attorney for Defendant Equity Residential Properties
18  AMY JOY TRAUB (Appearing telephonically)

19

20

21

22

23

24

25

170728nadeauD              Decision

1              (In robing room)

2              THE DEPUTY CLERK:  In the matter of Janice Nadeau

3    against Equity Residential Properties Management.

4              Will all parties please note their appearance for the

5    record, beginning with the plaintiff.

6              MR. FREI-PEARSON:  Jeremiah Frei-Pearson of

7    Finkelstein Blankinship Frei-Pearson & Garber for plaintiff in

8    the putative class.

9              Good morning, your Honor.

10             THE COURT:  Good morning.

11             MS. TRAUB:  Good morning, your Honor.

12             Amy Traub from Baker & Hostetler on behalf of

13   defendants Equity Residential Properties Management

14   Corporation.

15             THE COURT:  Good morning, and thank you both for

16   accommodating my schedule change this morning.  And I

17   understand that, Ms. Traub, pushing this back created problems

18   for you later on, so, of course, I have no problem with you

19   appearing by phone under these circumstances.

20             I have a court reporter here.

21             The first thing I'm going to do is, I'm going to issue

22   a bench ruling with respect to the defendant's pending motion

23   to strike class and collective action allegations.  For the

24   reasons that I will explain, the motion is denied without

25   prejudice to renewal after a limited period of discovery

170728nadeauD                Decision

 1   relating to the factual issues raised by the motion.

 2           Rule 23(d)(1)(D) of the Federal Rules of Civil

 3   Procedure provides that, "In conducting an action under Rule

 4   23, the court may issue orders that require that the pleadings

 5   be amended to eliminate allegations about representation of

 6   absent persons and that the action proceed accordingly."  To

 7   that end, the rule allows a party to "move to strike a class of

 8   claims even before discovery."  That's from the case of *Kassman*

 9   *v. KPMG*, 925 F.Supp.2d 453, 462 (S.D.N.Y. 2013), and it

10   collects other cases on that same point.

11           Now, as defendant candidly recognizes, "Motions to

12   strike class allegations are generally disfavored prior to

13   discovery on the grounds that they are procedurally premature,

14   but that such motions may be addressed prior to the

15   certification of a class if the inquiry would not mirror the

16   class certification inquiry and if resolution of the motion is

17   clear."  And that's a quote from the defendant's brief at page

18   4.  However, as plaintiff contends – and defendant does not

19   contest – a motion to strike class allegations is especially

20   "disfavored because it requires a reviewing court to

21   preemptively terminate the class aspects of litigation solely

22   on the basis of what is alleged in the complaint and before

23   plaintiffs are permitted to complete the discovery to which

24   they would otherwise be entitled."  That's a quote from the

25   plaintiff's brief at page 3, and it also includes a quote from

170728nadeauD                Decision

the case of *Winfield v. Citibank*, 842 F.Supp.2d 560, 573

(S.D.N.Y. 2012).

        The defendant's motion must fail because its central

argument is based on a misunderstanding of the material the

court may consider ruling on a prediscovery Rule 23(d)(1)(D)

motion.  The defendant argues that all putative members of

plaintiff's -- and this is a quote from plaintiff's brief at

page 4 to 5, by the way -- that "all putative members of

plaintiff's asserted class have agreed to resolve their wage

disputes through individual arbitration and have expressly

waived the right to be represented or to participate in a class

or collective action, and that either one of these reasons is

sufficient to grant defendant's motion to strike plaintiff's

class and collective action allegations."  And that quote from

the brief cites to the Lisa Leib declaration at paragraph 5

submitted in support of the motion.

        This argument is fundamentally based on materials

outside the pleadings; namely, a declaration of Lisa Leib,

defendant's vice-president in the legal department – not

allegations in the complaint.

        The parties briefed this motion as if it were a motion

to compel arbitration or a motion to dismiss under 12(b)(6).

Both of those types of motions on the issues of arbitrability

are decided under a standard similar to that applicable for a

motion for summary judgment, and that's from the plaintiff's

170728nadeauD                Decision

1    brief at page 4, quoting Second Circuit case *Bensadoun v.*

2    *Jobe-Riat*, 316 F.3d 171, 175.  However, the pending motion is

3    not a motion to compel or a motion to dismiss.  It is a

4    prediscovery motion to strike class allegations under

5    23(d)(1)(D).

6              Now, in this case, I've already found that plaintiff's

7    arbitration agreement is not enforceable because defendant's

8    refusal to arbitrate constituted a material breach; and because

9    there was a material breach, I also found that defendant could

10   not compel plaintiff to arbitrate.  I am therefore, and to say

11   the least, very reluctant to accept at face value defendant's

12   assertion that every other employee within the class definition

13   in the complaint has an enforceable arbitration agreement and

14   class action waiver agreement.

15             The defendant may be right, but I am not prepared to

16   reach that conclusion based solely on Ms. Leib's affidavit.

17   And, as I recall -- I may be getting this not exactly right --

18   but as I recall, Ms. Leib was the person who actually was

19   dealing with the plaintiff when the plaintiff was trying to

20   arbitrate her sole individual dispute.  And the upshot was that

21   the defendant didn't pay the fees and the arbitration was

22   dismissed.  And then in the great irony of ironies, the

23   defendant then tried to enforce arbitration once the lawsuit

24   was commenced.  And I think it was Ms. Leib herself who was

25   personally involved in that.  So now defendant is asking me to

170728nadeauD                Decision

 1   just accept her statements at face value that every other

 2   employee within the class definitions has this enforceable

 3   agreement, and I'm just not prepared to do that.

 4          Instead, what I'm going to do is order a period of

 5   discovery for the purpose of determining the existence and/or

 6   enforceability of potential class members' arbitration

 7   agreements and class and collective action waivers.

 8          After the conclusion of that period of discovery,

 9   because the Court will then have the benefit of a full factual

10   record on these issues, the defendant may renew its Rule

11   23(d)(1)(D) motion if it desires to do so, because, as I said,

12   the motion is denied, but it's denied without prejudice.

13          I'll instruct the clerk to terminate document 40,

14   which is the motion.

15          The thing is here, just so counsel are clear on this,

16   it may well be that defendants are right, that everybody else

17   has an enforceable class waiver and arbitration agreement,

18   "everyone else" meaning the people that are defined as members

19   of the class.  And it does seem to me that if that's the case,

20   I don't see a route by which the plaintiff would be able to get

21   a class certified.

22          That's your point ultimately, right, Ms. Traub?

23          MS. TRAUB:  That's correct, your Honor.

24          THE COURT:  And you may well be right.  In fact, this,

25   to me, is a threshold issue that we need -- because I think you

170728nadeauD              Decision

1   may be right, and because I think that the Nadeau situation may

2   be a one-off, although I don't know that -- Ms. Leib said,

3   Trust me, it's not.  Strike that.  Ms. Leib says, Trust me, it

4   is a one-off.  Everybody else was covered; it was just

5   Ms. Nadeau who had this issue.  I'm just not going to accept

6   that at face value.  I don't think plaintiff wants to accept it

7   at face value, either.  But that doesn't mean that she's wrong;

8   she may well be right.  My not accepting it at face value is

9   not the same as saying that she's not correct; it's just saying

10  I'm not accepting it at face value.

11          I'm just curious, Mr. Frei-Pearson.  How do you get to

12  certification of a class if, in fact, all the other people

13  within the definition have independent agreements which are

14  enforceable with the defendant?

15          How do you get there?

16          MR. FREI-PEARSON:  Sure.  We don't believe that all

17  the other people do have --

18          THE COURT:  That wasn't my question, of course.  And I

19  don't like it when lawyers don't answer my question.

20          See, the thing is, if I ask a question, it's a

21  thought-out, informed question on my part, and of course, we've

22  just been talking about this for ten minutes.  So, let's go

23  back to my question.  Let me see if you can answer that

24  question, please.

25          MR. FREI-PEARSON:  Sure.  For the FLSA collective,

170728nadeauD                Decision

1   it's our contention, and that's the majority of the authority

2   nationwide and within the Second Circuit, is that the

3   enforceability of arbitration agreements is a merits issue and

4   you deal with conditional certification before you deal with

5   arbitration.  For the FLSA collective, our position is we just

6   need a little bit of discovery that was already served and we'd

7   like to file that.

8        For the Rule 23, I understand your Honor's guidance.

9   And I'm prepared to look at the evidence the defendants have in

10  support of their claim that arbitration agreements are

11  applicable to other people and proceed accordingly.

12       THE COURT:  Well, that doesn't really answer my

13  question, or maybe I think when lawyers don't answer questions,

14  the clear implication is that they don't have a good answer.

15  And it seems to me what you're saying is, Well, Judge, you're

16  right, it's a problem for class action certification, but not

17  for collective action certification.  And you may be right

18  about that.  I'm not making a ruling one way or the other.

19       But you're telling me that if all these other people

20  have enforceable agreements, class and collective action waiver

21  agreements, that you still think an FLSA collective action is

22  possible, the certification of a collective action is possible,

23  even if these are enforceable agreements.  But it seems to me

24  you're also telling me that a class action certification would

25  not be possible.  The standards obviously are quite different

170728nadeauD              Decision

1  between the two.

2          MR. FREI-PEARSON:  Sure.

3          THE COURT:  Is that what you're saying?

4          MR. FREI-PEARSON:  That is essentially what I'm

5  saying, your Honor.

6          THE COURT:  Well, it took a while for you to answer my

7  question, but let me just give you a piece of advice.  You seem

8  like a nice, young man.

9          Do me a favor, in the future, if I ask you a direct

10  question, answer me directly.

11          MR. FREI-PEARSON:  I will.

12          THE COURT:  Because my experience, having practiced

13  law for 31 years, is that credibility with a judge is a really,

14  really important thing.

15          And you know, this applies to you, too, Ms. Traub, for

16  what it's worth, because I was really taken aback when I read

17  your moving papers on the previous motion where you didn't even

18  address the obvious elephant in the room, which was the fact

19  that your client had not gone ahead with arbitration when it

20  was asked to do so by Ms. Nadeau and then dragged its feet and

21  tried to settle the case -- there's nothing wrong with trying

22  to settle the case, of course.  That's fine.  But it didn't pay

23  the fees even though they were warned that they had to do so.

24  You didn't mention any of that in your moving papers.  It was,

25  like, you were silent, as if it was going to, like, sneak

170728nadeauD                 Decision

1   through without it being noticed by anybody.

2          And then, the plaintiff quite properly responded,

3   Well, wait a minute, there's a whole factual background here,

4   which is relevant, and they're right.

5          And then you finally did address it in your reply

6   brief.  And because the real heart of the issue only came up in

7   the opposition, as I recall, I allowed the plaintiffs to file a

8   sur-reply.

9          Am I right about that?

10         MR. FREI-PEARSON:  Your Honor denied our request for a

11  sur-reply, but your Honor may have read it.  We submitted it.

12         THE COURT:  You submitted a letter.

13         This is what lawyers all the time do:  We'd like to

14  submit a sur-reply, here is our sur-reply.  So, maybe that was

15  the case.

16         But the more important point is that this was

17  something that you didn't even mention in your papers.  I sort

18  of scratched my head about that.

19         Do you want to respond to that, Ms. Traub?

20         MS. TRAUB:  Yes, your Honor.  Appreciate the feedback

21  and tend to agree with your Honor that it should have been

22  mentioned.  Without divulging attorney/client privilege

23  communications, I will just say that that was a decision that

24  was not made by Baker & Hostetler to do that.

25         THE COURT:  Well, whoever made the decision made a

170728nadeauD                    Decision

1   really bad decision because, again, under the heading of the

2   judge has the -- I'm just the judge, I'm a neutral.  I don't

3   have any dog in this fight at all, I really don't.  And

4   frankly, it seems to me that this is one of those cases that

5   matters more to the lawyers than it matters to potential class

6   members, but I don't know.  That may be an overstatement.

7          But some of these class actions -- if you asked 100

8   people on the street, Gee, do you think this is important,

9   about 99.5 of them would say, No, we don't.  But if you ask 100

10  plaintiff class action lawyers, all of them would say it's

11  important, so I wonder what that means exactly.

12         But the point is that I don't appreciate efforts to

13  not mislead, that's not quite right, but to cleverly try to

14  avoid addressing what really matters.

15         And now I've been talking about that both with

16  Mr. Frei-Pearson and with you, Ms. Traub, for the last ten

17  minutes, and I think we've had enough of that.

18         Now, I've reviewed both of your proposed civil case

19  discovery plans and neither of them are going to be signed by

20  me.  I don't really blame you for that because of course you

21  didn't know exactly what I was going to do *vis-à-vis* this

22  motion, and you didn't know that I was going to say that this

23  is a threshold issue that needs to be addressed before

24  everything else, so that's okay.  But neither of them, sort of,

25  comply with this -- neither of them are consistent with what I

170728nadeauD               Decision

1   want to do.

2           So, what I would like to do is -- I'll hear from both

3   of you.  Really, what I'd like you to do is confer amongst

4   yourselves - you don't have to do it today, you can get back to

5   me within a week or so - and come up with a proposal as to what

6   sort of discovery needs to be done and how much time will it

7   take you to do it.

8           I would think that it wouldn't take very long because

9   Ms. Leib seemed pretty strong about it.  She said I know, I

10  know, trust me, Judge, I know that everybody else has an

11  enforceable agreement.  She is an attorney, so I'm assuming

12  that she wouldn't have said that unless she actually checked

13  first to confirm for herself before she made an under-oath

14  statement to a federal judge that she was correct.

15          So, I'm sort of assuming that you already have the

16  discovery that would prove this and that you could probably

17  produce it this afternoon.  I'm not going to make you do that,

18  but it couldn't be complicated because she's already made that

19  blanket statement.  You must already know this, is what I'm

20  saying, you and your client.  I should broaden that.

21          How do you respond to that, Ms. Traub?

22          MS. TRAUB:  That's an accurate assumption on your

23  part, your Honor.

24          THE COURT:  Okay.

25          So, what do you really need to do, Mr. Frei-Pearson?

170728nadeauD                    Decision

1          MR. FREI-PEARSON:  We served discovery requests

2     seeking all arbitration agreements and also any examples of

3     arbitration proceedings, both that actually occurred and that

4     were denied like our client's, Ms. Nadeau's.  And we just need

5     the class list, right, and then we'll compare who has

6     arbitration agreements.  And then we'll look at the arbitration

7     agreements and decide what our response would be to a potential

8     motion to compel to each one of them.

9          THE COURT:  A motion to compel --

10         MR. FREI-PEARSON:  To compel arbitration.  Is this an

11    enforceable arbitration agreement?

12         THE COURT:  I see.

13         MR. FREI-PEARSON:  Was it actually signed?  Was it --

14    all the --

15         THE COURT:  Right, all of the usual sorts of contract

16    questions that any lawyer would examine.

17         How many people do you think, Mr. Frei-Pearson, are

18    within the class definition period?  I forget now.  I just

19    don't remember what it was.  I'm using that term as a generic

20    term, "the class definition," but I don't remember exactly what

21    the class definition is.

22         MR. FREI-PEARSON:  Sure, your Honor.  Apologies if I

23    don't give you a one-hundred-percent direct answer.  We're not

24    certain because we haven't had discovery.

25         THE COURT:  No, but you defined it in the complaint.

14

170728nadeauD            Decision

1       MR. FREI-PEARSON:  Yes.  We believe there's
2  approximately 2- to 4,000.  That's our current belief, but we
3  stand to be educated by the defendants.
4       THE COURT:  Of course.  And you don't know because you
5  don't have the discovery.
6       Well, what Mr. Frei-Pearson is saying seems reasonable
7  to me.  The only question is, how much time is it going to take
8  to do this discovery.  There might be depositions involved.  I
9  guess it, sort of, depends on the paper discovery, whether
10  there's going to be depositions.  You may see something in
11  there -- both sides might see something in there that would
12  warrant further inquiry of the particular employee involved.
13       And these are people that worked in different places,
14  right?  They're not all in one place; am I right about that?
15       MR. FREI-PEARSON:  That's correct.
16       THE COURT:  Is this nationwide?
17       MR. FREI-PEARSON:  It is.  They're not in all 50
18  states, but it's in multiple states.
19       THE COURT:  It's a big company.  It's like an
20  apartment building management company.  They manage buildings
21  for landlords, is that the gist of it, or are they landlords
22  themselves?  It may be both.  I don't know.
23       MR. FREI-PEARSON:  It's my understanding from my
24  client that they manage buildings.  They may also be the
25  landlord, but I don't know the answer to the second part of

SABRINA A. D'EMIDIO - OFFICIAL COURT REPORTER
(914)390-4053

170728nadeauD              Decision

1   your question.

2           THE COURT:  What do you think about that, Ms. Traub?

3   Again, we don't have to settle this right this second, except

4   that I don't want to be bombarded with lots of competing

5   letters.

6           What I'd really like you to do, given the guidance

7   that I've just given to you both, is to spend a few minutes

8   talking to each other and your respective clients and coming up

9   with a proposal for discovery on this discrete issue.

10          What do you think?

11          MS. TRAUB:  We will do that, your Honor.  At first

12   blush, my initial thoughts about what Mr. Frei-Pearson is

13   suggesting would seem reasonable, although would require the

14   production of thousands of -- it's actually more than he's

15   estimated -- thousands of arbitration agreements.

16          Certainly, one limitation we would seek at the outset,

17   because there is no similarity between Ms. Nadeau and a

18   unionized employee, is to extract from that production at this

19   stage the arbitration agreement set forth in collective

20   bargaining agreements.

21          Ms. Nadeau did not collectively bargain as a union

22   member, so that could help to reduce the production.

23          THE COURT:  What do you think about that,

24   Mr. Frei-Pearson?

25          MR. FREI-PEARSON:  So, it's our understanding that

170728nadeauD                Decision

1   folks who were collectively bargaining did not sign binding

2   arbitration agreements and, therefore, the arbitration defense

3   could not apply to them.

4         It's also in our understanding that they were subject

5   to the same minimum wage violations as Ms. Nadeau and they

6   would be in the class.  So, we would certainly not agree to a

7   production that doesn't let us prove and illustrate that point.

8   We'd need --

9         THE COURT:  Right, but if these people are subject to

10  collective bargaining, then I'm guessing there's some other

11  remedy that they would have for this kind of an issue, not

12  bringing a lawsuit under the FLSA or just a regular class

13  action.

14        MR. FREI-PEARSON:  It's my understanding -- I've seen

15  nothing saying that they're foreclosed.  If there's another

16  defense that forecloses them from being part of the class or

17  collective action, I'm happy to entertain it, but they have a

18  right to be paid for every hour they worked and we don't

19  believe they were.

20        THE COURT:  Right, I agree with you.  They certainly

21  have a right to be paid for the hours they worked and so does

22  Ms. Nadeau, and so do the people exactly similarly situated to

23  her.  It begs the question, of course, of what hours did they

24  work, (a); and (b), it also begs the question of whether

25  there's some sort of contract that they entered into that

170728nadeauD              Decision

1    effectively prevents them from being a member of a class.

2              MR. FREI-PEARSON:  Right.

3              THE COURT:  So, well, look, I'm going to -- I think

4    we've had enough conversation about it.  I don't know enough

5    about the case, and I guess that's really the message here.  I

6    don't know enough about this case, and I don't know enough

7    about this case to grant the motion that I've just denied

8    today, but I think there may be a point in time where I will

9    know enough about the case to thoughtfully consider that motion

10   and may even grant it.  I don't know.

11             So, at this point, I think I'm just going to leave it

12   up to the two of you to try and work this out in good faith,

13   come up with a reasonable plan, with a reasonable time frame.

14   I'm not putting in any explicit deadlines.  I'm not saying it's

15   got to be a month or it's got to be three months or it's got to

16   be six months.  I don't know.  It shouldn't be that complicated

17   because although there is a lot of paperwork, it sounds like

18   there's going to be basically two contracts:  One that the

19   people have that are not part of the union, and the other being

20   the one that the people who are part of the union have, I

21   think, unless I'm missing something.

22             So, there may be a lot of different people involved,

23   but there's not a lot of different contracts involved in terms

24   of the form of the contracts.  Anyway, that's what I want.

25             How much time do you think you need to have that

170728nadeauD              Decision

1   discussion and then get back to me with a proposal?

2          Ms. Traub, I'll let you go first.

3          MS. TRAUB:  I don't think very long, your Honor, in

4   terms of having the discussion.  Perhaps we could have

5   something turned around to your Honor within two weeks of

6   today's date.

7          THE COURT:  Are you okay with that, Mr. Frei-Pearson?

8   Reasonable?

9          MR. FREI-PEARSON:  That's reasonable.

10          THE COURT:  Let's do that, then.  And I know we're

11   getting into August, and some of us, including me, are going to

12   be away, but if you're telling me two weeks, that seems

13   reasonable to me.  So why don't we do this:  Why don't I expect

14   to hear from you with a joint letter, getting one letter, if

15   you can't agree on everything, I want you still to put it in

16   one letter.  I've got enough letters.  But what I'm really

17   urging you to do and expecting you to do is come up with an

18   agreed-upon discovery schedule for this issue that I've

19   described and to present it to me by two weeks from today,

20   which would be August 11.

21          How does that sound to both of you?

22          MS. TRAUB:  That's fine with the defendant, your

23   Honor.

24          MR. FREI-PEARSON:  With plaintiff as well, your Honor.

25          THE COURT:  Excellent.

170728nadeauD                Decision

1        As I said, what I said today about the motion is on

2   the record.  So if either of you want to order the transcript,

3   you're welcome to do that, but I'm not going to issue a written

4   opinion.  I didn't think it was necessary in this case.

5        Anything else that we need to do today, Ms. Traub?

6        MS. TRAUB:  Not from defendant's perspective, your

7   Honor.

8        THE COURT:  Mr. Frei-Pearson.

9        MR. FREI-PEARSON:  No.  Thank you, your Honor.

10        THE COURT:  Great.

11        Both of you have a great day, and I'll hear from you

12   in a couple of weeks.

13        MS. TRAUB:  Thank you.

14        MR. FREI-PEARSON:  Thank you.

15                            - - -

16   Certified to be a true and correct

17   transcript of the stenographic record

18   to the best of my ability.

19   _____

    U.S. District Court
20   Official Court Reporter

21

22

23

24

25