# EXHIBIT A

## **SETTLEMENT AGREEMENT AND GENERAL RELEASE**

This SETTLEMENT AGREEMENT AND GENERAL RELEASE (the "Agreement") is made and entered into as of April 10, 2018, between Janice Nadeau ("Nadeau") and Equity Residential ("Equity").

WHEREAS, for the purposes of this Agreement, the term "Equity" includes Equity Residential Services, L.L.C., Equity Residential Properties Management Corp. ("ERPMC"), Equity Residential Properties Management Corp. II, ERP Operating Limited Partnership, Equity Residential, Equity Apartment Management, L.L.C., Evans Withycombe Management, Inc., and to the extent applicable, as direct, intended and third party beneficiaries hereof, their past and present owners, directors, officers, agents, attorneys, insurers, employees, representatives, trustees, administrators, fiduciaries, parents, subsidiaries, divisions, partners, joint ventures, sister corporations and/or affiliated business entities, predecessors, successors, heirs, and assigns, jointly and severally, in both their personal and corporate capacities; and

WHEREAS, for the purposes of this Agreement, the term "Nadeau" shall include Janice Nadeau, her heirs, successors, agents, and assigns.

WHEREAS, Nadeau is the named plaintiff and only opt-in plaintiff in a putative class- and collective- action lawsuit pending against ERPMC in the United States District Court for the Southern District of New York, captioned *Janice Nadeau, individually and on behalf of others similarly situated, v. Equity Residential Properties Management Corporation,* Case No. 7:16-cv-07986-VLB-LMS (the "Civil Action"); and

WHEREAS, Equity has denied and continues to deny all allegations in the Civil Action and has denied and continues to deny any and all liability and damages to anyone with respect to the alleged facts or causes of action related to this Civil Action, and ERPMC further denies employing Nadeau at any time; and

WHEREAS, ERPMC moved to strike class- and collective-action allegations from Nadeau's complaint on the grounds that participation in either the class- and/or collective-action would be barred for each and every potential class- and collective-action member by operation of individually signed arbitration agreements and class action waivers; and

WHEREAS, Nadeau and ERPMC engaged in discovery, including written discovery for the purpose of determining the existence and/or enforceability of potential class- and collective- action members' arbitration agreements and class- and collective-action waivers; and

WHEREAS, after the conclusion of this narrowed scope of discovery, ERPMC filed its Renewed Motion to Strike Class- and Collective-Action Allegations; and;

WHEREAS, Nadeau has chosen to enter into this Agreement in lieu of opposing ERPMC's Renewed Motion to Strike Class- and Collective-Action Allegations and has indicated that she wishes to dismiss the lawsuit in its entirety *with prejudice,* provided that Equity agrees to the terms below; and

WHEREAS, Equity and Nadeau recognize and agree that it is in their mutual best interests to resolve their differences as set forth herein. Equity and Nadeau also recognize and agree that

neither Equity nor Nadeau admits to any wrongdoing and that this Agreement represents a compromise of disputed matters in order to avoid the delay and uncertainties of litigation; and

WHEREAS, Equity and Nadeau wish to fully, finally and completely resolve all claims, causes of action, demands, liabilities, losses and damages of any kind, known or unknown, as defined in this Agreement; and

NOW, THEREFORE, in consideration of the covenants and obligations set forth below, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Equity and Nadeau agree as follows:

1. **Recitals**. The recitals set forth above are incorporated by reference as though set forth fully herein.

2. **Consideration Provided to Nadeau**. In consideration for Nadeau's execution of this Agreement, Equity will pay or cause to be paid to Nadeau a total gross amount equal to fifteen thousand dollars and no cents ($15,000.00) ("Settlement Payment"), within ten (10) business days of the date each term of this Agreement is satisfied, the Agreement is executed by all parties, and all necessary tax forms are completed and returned to Equity ("effective date"). The form of the Settlement Payment will be as follows:

   a. One check for five thousand dollars and no cents ($5,000.00), less applicable payroll taxes and withholdings, will be made payable to Janice Nadeau. This amount will be treated, by agreement, as wages, and Equity will cause the appropriate Form W-2 to be issued to Nadeau for this amount in accordance with state and federal law and the regulations of the Internal Revenue Service; and

   b. One check for ten thousand dollars and no cents ($10,000.00), will be made payable to Finkelstein, Blankinship, Frei-Pearson & Garber, LLP ("FBFG"), attorneys for Nadeau. FBFG will provide a completed Form W-9, such that Equity can issue a timely Form 1099 for this amount in accordance with state and federal law and the regulations of the Internal Revenue Service.

The checks described in paragraph 2.a. and 2.b. shall be delivered to counsel for Nadeau, Jeremiah Frei-Pearson, of the law offices of FBFG.

3. **No Taxability Representations**. Nadeau and FBFG understand that Equity is not making any representations regarding the taxability or non-taxability of the Settlement Payment, and Nadeau and FBFG agree that they are individually responsible for paying appropriate taxes regarding the Settlement Payment in a timely manner. Nadeau further agrees to indemnify/reimburse Equity should any state or federal tax authority seek tax-withholding payments from Equity related to its payments in Paragraph 2.

4. **No Effect On Other Benefits**. No payments under this Agreement will create any credit or otherwise affect the calculation of benefits provided under any benefit or compensation plan or program provided by Equity (such as 401(k), pension, bonus, severance, or deferred compensation plans), and no payment made pursuant to this Agreement will be compensation for purposes of such plans/programs, require any contribution or award under such plans/programs, or otherwise require or modify coverage, contributions, or benefits under such plans/programs. With

respect to benefit plans and claims under the Employee Retirement Income Security Act ("ERISA"), this Agreement releases claims that could have been brought under any applicable benefits plan offered by Equity, but only to the extent any such claims were based on the Settlement Payment paid pursuant to this Agreement, and not as to any other claims that could have been brought under any benefit plan offered by Equity.

5. **General Release.** As a material inducement for the parties to enter into this Agreement, both parties hereby fully, finally, and unconditionally release each other from any and all claims, suits, demands, charges, debts, grievances, costs, attorneys' fees or injuries of every kind or nature, whether known or unknown, absolute or contingent, suspected or unsuspected, which Nadeau had or now has against Equity and which Equity had or now has against Nadeau based on any matter or thing occurring or arising prior to the effective date of this Agreement, including but not limited to claims arising out of or relating to Nadeau's employment with Equity or the separation of Nadeau's employment from Equity. This release includes, but is not limited to, claims for breach of any implied or express employment contract, wrongful discharge or layoff, constructive discharge, retaliatory discharge, defamation, intentional or negligent infliction of emotional distress, invasion of privacy, loss of consortium, negligence, impairment of economic opportunity or other common law matters; claims for wages, bonuses or other compensation, Nadeau hereby acknowledging that all such sums owed her have been paid, and claims of any constitutional right or discrimination based on age, color, concerted activity, disability, marital status, national origin, parental status, race, religion, retaliation, sex, sexual orientation, source of income or veteran's status, including but not limited to claims arising under Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991, the Americans With Disabilities Act, the Older Workers Benefit Protection Act, the Employee Retirement Income Security Act, the Equal Pay Act, the Family And Medical Leave Act, the National Labor Relations Act, the Corporate and Criminal Fraud Accountability Act of 2002, Title VIII of the Sarbanes-Oxley Act of 2002, the Dodd-Frank Wall Street Reform and Consumer Protection Act, and any amendments to any of these statutes, as well as any other state and local statutes and ordinances pertaining to the employment relationship or prohibiting discrimination in employment, including but not limited to the laws of the State of New York. Nothing in this Agreement shall be construed to prohibit Nadeau from filing or proceeding with a charge with or participating in any investigation or proceeding conducted by the Equal Employment Opportunity Commission (EEOC), National Labor Relations Board (NLRB), or any other comparable federal, state or local agency charged with the investigation and enforcement of any employment laws, although by signing this Agreement, Nadeau agrees and understands that she is waiving her right to individual relief based on claims asserted in such a charge or complaint. Nadeau further waives any right to monetary recovery should any administrative agency pursue any released claim on Nadeau's behalf. If for any reason any such agency takes the position that a pending charge has been brought on Nadeau's behalf or encompasses Nadeau, Nadeau agrees to immediately advise the agency in writing that she does not wish to be involved in the matter and that the agency should terminate all efforts on Nadeau's behalf, all claims having been fully and fairly satisfied by this Agreement. Excluded from this Agreement are any claims or administrative charges which cannot be waived by law, including, without limitation, claims for workers' compensation and unemployment compensation, and claims relating to health insurance continuation rights under the terms of COBRA and rights to vested retirement benefits, if any. Also excluded are claims to enforce the rights and obligations of the parties to fulfill their respective undertakings pursuant to this Agreement. NADEAU UNDERSTANDS AND AGREES THAT THIS RELEASE FOREVER BARS NADEAU FROM SUING, ARBITRATING OR OTHERWISE ASSERTING A CLAIM AGAINST EQUITY ON ANY RELEASED CLAIM AND HEREBY COVENANTS

NOT TO ASSERT ANY SUCH CLAIM. EQUITY UNDERSTANDS AND AGREES THAT THIS RELEASE FOREVER BARS EQUITY FROM SUING, ARBITRATING OR OTHERWISE ASSERTING A CLAIM AGAINST NADEAU ON ANY RELEASED CLAIM AND HEREBY COVENANTS NOT TO ASSERT ANY SUCH CLAIM.

6. **Dismissal of Complaint.** Nadeau and ERPMC shall stipulate to the dismissal of her Complaint, filed in the above referenced Civil Action, in its entirety, with prejudice within three business days of the Court's approval of this Agreement.

7. **Confidentiality other than Court Disclosure**. *Equity, Nadeau and FBFG understand and agree that disclosure of the terms of this Agreement to the Court in connection with seeking the Court's approval of this Agreement is necessary.* This disclosure notwithstanding, Equity, Nadeau and FBFG agree to keep confidential the fact of the settlement of this matter and the terms of this Agreement. Equity, Nadeau and FBFG shall not disclose such information to any person or party other than to attorneys, immediate family members, and tax advisors. If anyone questions Equity, Nadeau or FBFG regarding this matter, they agree to simply shall state, "the matter has been resolved." Nadeau and FBFG shall instruct anyone contemplated above to honor this confidentiality agreement with respect to any disclosure.

8. **Non-Admission of Liability**. This Agreement shall not in any way be construed as an admission by Equity that it has acted wrongfully with respect to Nadeau or any other person, or that Nadeau has any rights whatsoever against Equity. Equity specifically disclaims any liability to or wrongful acts against Nadeau or any other person. Furthermore, this Agreement cannot and shall not be used in evidence as proof of liability.

9. **Assistance of Counsel and Understanding of Terms**. The General Release is intended as a legally binding obligation and known relinquishment of any and all rights of Nadeau against Equity and any and all rights Equity has against Nadeau. Both parties acknowledges that they have had the assistance and advice of counsel in reviewing and understanding the General Release, as well as the underlying Agreement, or that they have been advised to consult with counsel of their choosing regarding the General Release, and that they understand completely the General Release and the legal effects thereof.

10. **Full Satisfaction – No Attorneys' Fees or Costs**. Nadeau acknowledges and agrees that the Settlement Payment is in full satisfaction for the claims she asserted and could have asserted in connection with the Civil Action. Nadeau acknowledges and agrees that she has been paid in full for all time worked. Equity shall not have any liability whatsoever for such attorneys' fees, costs and/or disbursements beyond the $10,000 paid pursuant to this Agreement. Further, Nadeau agrees to indemnify and hold harmless Equity from any claims of any attorney or law firm purporting to represent or to have represented Nadeau in the Civil Action or any dispute with Equity. Equity, in turn agrees that it will not pursue any claims against Nadeau or FBFG for attorneys' fees, costs and/or disbursements incurred in connection with the Civil Action, including fees incurred in negotiation and preparation of this Agreement, except that nothing in this sentence is intended to waive any claims for fees, costs and/or disbursements incurred as a result of a breach of this Agreement by Nadeau or FBFG, either jointly or individually, or attorneys' fees, costs and/or disbursements incurred by Equity to enforce the terms of this Agreement. Nothing in this Agreement is intended to waive any claims for fees, costs and/or disbursements incurred as a result

-4-

of a breach of this Agreement by Equity, either jointly or individually, or attorneys' fees, costs and/or disbursements incurred by Nadeau to enforce the terms of this Agreement.

11. **No Re-Employment.** Nadeau understands that any employment relationship she had with Equity permanently and irrevocably severed as of the date of her termination. Nadeau agrees not to apply for employment or re-employment or other engagement with Equity at any time in the future, and Equity will not process and will not be obligated to process any application submitted by or on behalf of Nadeau. If Nadeau is subsequently hired by any company owned, managed or otherwise acquired by Equity, is otherwise directly or indirectly engaged as a consultant for Equity, or is assigned by a staffing agency to work for Equity, Nadeau agrees that this Agreement shall constitute good cause for the lawful termination of her employment or other engagement. Nadeau specifically agrees that this Agreement may be pled as an absolute bar to any claim or cause of action, whether brought in federal court, state court or before any administrative agency, if such claim or cause of action relates directly or indirectly to any claim pertaining to Nadeau's employment, an application for employment or other engagement, or any attempt to seek or hold any employment or other engagement with Equity, and hereby covenants not to assert any such claim.

12. **No Other Actions Pending.** Nadeau represents that, other than the Civil Action, she has not instituted, joined, or otherwise sought to participate in any lawsuit or administrative proceeding against Equity, nor is she aware of any facts that would serve as the basis for any civil or administrative proceeding. Equity represents that it has not instituted, joined, or otherwise sought to participate in any lawsuit or administrative proceeding against Nadeau, nor is it aware of any facts that would serve as the basis for any civil or administrative proceeding.

13. **Non-Disparagement.** Nadeau agrees not to take any action or publish or make any statement the intent or reasonably foreseeable effect of which is to impugn or injure the reputation or goodwill of Equity or any of its officers, trustees or employees.

14. **Non-Assignment.** Nadeau represents that no claim covered by the General Release has been assigned, transferred, or hypothecated or purportedly assigned, transferred, or hypothecated to any person or entity, any claim or portion thereof or interest therein, including, but not limited to, any interest in the Civil Action, or any related action.

15. **Agreement Contingent Upon Court Approval.** This Agreement is contingent upon approval by the Court in the Civil Action, which the parties agree to seek by filing a Joint Motion for Approval of Settlement, or another appropriate document, by no later than April 9, 2018. Following the Court's entry of an order approving this Agreement, Nadeau shall file a voluntary dismissal *with prejudice* and, to the extent that additional steps may need to be taken regarding dismissal of any actions, charges or claims she may have against Equity, Nadeau agrees to cooperate with Equity in effectuating dismissal of all such charges and claims. This Agreement is not effective or enforceable until the Court has entered an order approving the Agreement and the claims are dismissed *with prejudice*. Additionally, this Agreement is not effective or enforceable until Nadeau and an authorized representative of FBFG sign this Agreement.

16. **Warranty Regarding Other Potential Claimants/Putative Plaintiffs.** Nadeau and FBFG have neither disclosed or revealed the contents of this Agreement nor communicated the potential for any legal action against Equity to any other potential plaintiff or putative collective

action member, or any other attorney or law firm. Nadeau and FBFG represent and warrant that, other than Nadeau, they are not aware of any person who has expressed an interest in participating in an action against Equity. FBFG further represents and warrants that no FBFG attorney has been retained by and/or is representing any person other than Nadeau who has expressed an interest in participating in an action against Equity. FBFG further represents and warrants that they will not advertise, solicit, or take affirmative steps to attempt to identify any person who has an interest in participating in an action against Equity.

17. **Inuring to the Benefit of the Parties and of Others**. This Agreement shall inure to the benefit of Equity, as defined herein, its predecessors, successors and assigns, and it is and will be binding upon Nadeau and her respective heirs successors, agents, assigns, executors, administrators, and legal representatives.

18. **Entire Agreement**. This Agreement constitutes the entire agreement of the parties. All other prior or contemporaneous agreements or understandings, verbal or written, are null and void. Furthermore, no modification of this Agreement shall be made except by written agreement between the parties.

19. **Tolling**. Nadeau and FBFG acknowledge and agree that nothing in this Agreement shall have any effect upon applicable statutes of limitations with respect to any current or former employee of Equity who is not a party to the Civil Action.

20. **Construction of Agreement**. Should a court of competent jurisdiction hold any provision of the Agreement unenforceable or invalid, the Agreement shall be construed and enforced as if not containing that provision.

21. **Governing Law and Venue**. This Agreement shall be governed by the laws of the State of Illinois, and the venue for any action arising therefrom shall be the state and federal courts with jurisdiction over Cook County, Illinois.

22. **Counterpart Signatures Permitted**. This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original and all of which together shall be deemed to be a single agreement. The signatures to this Agreement need not all be on a single copy of this Agreement, and may be facsimiles or other electronic transmissions rather than originals, and shall be fully as effective as though all signatures were originals on the same copy.

[signature page to follow]

THE PARTIES ACKNOWLEDGE THAT EACH HAS BEEN REPRESENTED BY COUNSEL IN THE NEGOTIATION AND PREPARATION OF THIS AGREEMENT, THAT EACH HAS READ THE AGREEMENT, THAT EACH HAS HAD A REASONABLE PERIOD OF TIME WITHIN WHICH TO CONSIDER THIS AGREEMENT AND THAT EACH IS SIGNING THIS AGREEMENT KNOWINGLY AND VOLUNTARILY WITH THE FULL INTENT TO BE BOUND BY ALL OF ITS TERMS, AND A FULL UNDERSTANDING OF THE CLAIMS AND RIGHTS BEING RELEASED AND WAIVED.

IN WITNESS WHEREOF, the parties have executed this Settlement Agreement and General Release on the date(s) set forth below.

EQUITY RESIDENTIAL

By: _____

Its: Vice-President

Date: 4/16/2018

JANICE NADEAU

By: _____

Date: 4/15/2018

EQUITY RESIDENTIAL PROPERTIES
MANAGEMENT CORP.

By: _____

Its: Vice-President

Date: 4/16/2018

FINKELSTEIN, BLANKINSHIP,
FREI-PEARSON & GARBER, LLP

By: _____

Its: Partner

Date: 4/16/18

-7-